(No. 35243.—

ANNA M. TRZEBIATOWSKI, Appellee, *vs.* WILLIAM C. JEROME, Appellant.

*Opinion filed March 31, 1960.*

DONALD M. ORSTROM, of Chicago, for appellant.

EDGAR J. ELLIOTT, of Wheaton, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Plaintiff, Anna M. Trzebiatowski, on January 10, 1957, filed her complaint in the circuit court of Du Page County to nullify and avoid a certain trust agreement between the plaintiff and the defendant and his wife, and such other and further relief as to the court should seem meet, for fraud of the defendant, William C. Jerome. After trial of the cause the court entered its decree ordering that a certain contract dated May 25, 1949, signed by plaintiff authorizing defendant to contact bondholders upon plaintiff's Wheaton property and to bring tax foreclosure proceeding on said

property, be declared null and void, that a deed in trust dated April 10, 1950, conveying the said Wheaton property to defendant as trustee, be null and void, and declaring the trust agreement dated April 10, 1950, wherein defendant and his wife were declared entitled to one-half interest in the property, with the other one-half interest to plaintiff and then to her children, be null and void. An interest in real estate being necessarily involved, a freehold is in issue, and defendant appeals directly to this court.

At the time of the trial plaintiff was 73 years old. She testified that defendant's wife introduced her to defendant, an attorney, at the church to which they all belonged. She claimed the only conference she ever had with defendant concerning her property was in 1950 at her home, when he suggested she have a will. They then proceeded to defendant's home to have his wife type the document and plaintiff signed it, without reading it or receiving a copy of it. She denied that she ever requested defendant to prepare a trust agreement or a deed in trust. She claimed she requested her will from defendant in the fall of 1950 and he said it was packed away but he would get it for her. Plaintiff insisted that she never engaged the defendant to refinance and handle, or rezone her Wheaton property, or to prevent a mortgage foreclosure thereon. She denied that she told the defendant that she wished to prevent Mr. Norwick, who later became her son-in-law, from acquiring any interest in the property.

Plaintiff further stated that defendant had nothing to do, as an attorney, with placing her Elmhurst property in trust, but he did accompany plaintiff and her daughter to the Elmhurst bank, merely as a friend. She identified the signatures on the deed in trust, the trust agreement, and the employment contract of May 28, 1949, as her own, but she denied signing any documents before Stanley H. Richards, a notary public, who is shown to have taken the acknowledgment upon the deed in trust.

Irene Norwick, plaintiff's daughter, testified she was in her mother's home in the spring of 1950 when defendant was there, and heard a discussion in regard to a will. Defendant offered to draw a will and plaintiff accompanied him to his home. On cross-examination she related that she accompanied her mother and defendant to the Elmhurst bank, to convey some property then in her name to her mother. She did not know if plaintiff and defendant had any discussions before the trip to the bank, but defendant went along only as a friend.

No other witnesses testified for plaintiff at that time and defendant moved for a directed verdict for failure of plaintiff to sustain her cause, which was denied.

Defendant called Irene Norwick as a witness in behalf of himself. She denied she had given the deed in trust to plaintiff's attorney, but stated that her mother gave the papers to her attorney. Her husband, Stephen Norwick, likewise denied delivering any documents to plaintiff's attorney. Mr. Elliott, plaintiff's attorney, said he received all the information in the complaint from the plaintiff and the exhibits from plaintiff or Mr. or Mrs. Norwick.

F. E. Herrick, an attorney, testified that he had some conferences with plaintiff and defendant in connection with some Wheaton property, and he examined some of the papers, but he could not remember the substance of their conversations.

In his own defense, Mr. Jerome, the defendant, testified that his wife introduced him to the plaintiff at church. He claimed the plaintiff first consulted him in the fall of 1947 or the winter of 1947-1948, with their first serious conversation at her home in January, 1948. Later plaintiff told him the mortgage on her Wheaton property was long past due and the mortgage holders were pressing her. After viewing the property and being retained by the plaintiff as her attorney, he advised the property be rezoned. She asserted she had no funds to pay for the mortgage, or

to pay her attorney's fees and proposed he take a percentage or part of the property as a retainer. After examining the situation, he proposed some protection from foreclosure, to clean up the taxes, and to rezone the property, and that it be split fifty-fifty as a fee. She first objected that the price was too high, and then she agreed. He thereupon prepared the letter or contract of May 28, 1949, authorizing himself to contact the bondholders on the Wheaton property for the purpose of purchasing the bonds at the least possible price, to bring foreclosure on the property, and providing he should receive one-half of the eventual sale of the property, or of the value of the property if not sold. This document was signed by plaintiff.

He claimed his representation of plaintiff continued over several years time. He reviewed the history of the conveyances and transactions relating to the property and found that the taxes from 1929 were unpaid. He contacted the note holders, and by February or March of 1950 had acquired all of the notes for about 20 cents on the dollar. These notes were to be paid for upon cleaning up the taxes. At the time of the trial defendant had the bonds in his possession. In the fall of 1949 they also began discussing the Elmhurst property, and the plaintiff continually objected to her daughter keeping company with Mr. Norwick, and she didn't want him to get an interest in her property. Plaintiff said she had willed the property to her daughter, Irene, and could do nothing about it. He later found that the title to the Elmhurst property was in the daughter, and upon informing plaintiff she agreed and said she had willed it. He then suggested she could persuade Irene to convey it to the Elmhurst bank as trustee, giving her a lifetime use of it. She later reported Irene was agreeable to convey.

At that time he reported he had completed the work on the notes and some arrangement should be made about the Wheaton property as he had earned his fee. They made several trips to the Elmhurst bank. Irene conveyed the Elm-

hurst property. under the terms of a trust agreement, which defendant claimed he prepared. He also prepared a trust agreement and deed in regard to the Wheaton property providing a life interest in plaintiff in one-half with one-half to defendant and his wife, and the other one-half, upon the death of plaintiff to go to her children, Irene and Geraldine, and her grandchildren, Robert and Elizabeth Sandman, equally. They later had numerous conferences regarding rezoning of the Wheaton property, and she complained that Mr. Norwick wanted the trust revoked. He contacted several concerns with regard to development of this property.

After a lengthy hearing the court stated that there was no evidence that the defendant had informed the plaintiff at the time he began preparing the contract of May 28, 1949, or ever, that the notes were outlawed; that the contract provided defendant should proceed to foreclose the taxes, which he had not done; that there was clearly a fiduciary relationship and no evidence that defendant advised plaintiff as to her defenses to a foreclosure of the mortgage. The court found that there were six notes, only one of which had received any payment, and there was no payment after 1935, thus outlawing the notes in 1945. The court found the fee was unconscionable, and was paid for services which were not rendered or were of no value, hence no services were in fact performed, the execution of the trust agreement constitutes fraud, and the court set aside the deed in trust.

A freehold being involved the defendant appeals to this court contending that (1) he could not be guilty of fraudulently obtaining an interest in plaintiff's Wheaton property by the deed in trust, (2) that no fiduciary relationship existed when the contract of May 28, 1949, was executed, (3) the complaint is not sufficient to support the judgment, and the judgment does not conform to the complaint, (4)

the special defense of the Statute of Limitations is controlling to bar the action, and (5) *laches* and estoppel apply to bar the cause.

Defendant contends that he could not have been guilty of fraudulently obtaining an interest in plaintiff's Wheaton property for the reason that he took an interest therein by virtue of a deed in trust executed pursuant to a contract executed by plaintiff on May 28, 1949, which deed in trust was recorded April 13, 1950, in the recorder's office of Du Page County. Without doubt defendant became the attorney for plaintiff in regard to her Wheaton property on May 28, 1949, if not before. From that time forward, until his employment was terminated, a fiduciary relation existed between plaintiff and defendant, with plaintiff placing her reliance in defendant.

Defendant objects that the complaint sounds in actual fraud and is based upon a fraudulent wilful misrepresentation, and the judgment is replete with references to and findings of constructive fraud, overreaching, unconscionable fee, enrichment, and either no services or no useful services. He asserts that the findings are based upon a theory not advanced in the pleadings and to which he had no opportunity to defend. It is his position that plaintiff sued upon the legal theory that no contract existed between her and the defendant, then shifted to an admission of the employment contract of 1949 but asserting that the contract was obtained through fraud and misrepresentation, to which latter position he had no opportunity to defend.

The question of the existence and execution of the contract of employment, and any fraud arising therefrom, arises not from the pleadings but from the evidence presented by defendant in defense to plaintiff's complaint. The theory upon which the trial court proceeded in rendering the decree arose from the evidence presented and the arguments of counsel thereon. The court found that defendant had con-

cealed the fact that the notes were outlawed, that he failed to foreclose the tax liens, and that from this concealment and the slight evidence of actual legal services the finding of unconsionable fee naturally arose.

The defendant was given wide latitude in the presentation of his evidence. It is undisputed in the record that defendant investigated the situation generally before he purported to begin his representation of the plaintiff. The evidence adduced and available to the trial court clearly indicates that the defendant, at the time he obtained the deed in trust, had done nothing to foreclose the delinquent taxes. The notes, and evidence in regard to them, indicate that the notes were barred by the Statute of Limitations. The latest maturity date was June 2, 1932, far more than ten years previous to defendant's earliest contact with plaintiff, and no extension thereof is shown. (Ill. Rev. Stat. 1957, chap. 83, par. 11.) It thus appears from the record that any foreclosure of the mortgage securing the notes was barred and the notes outlawed.

The trial court in rendering its determination relied heavily upon this view of the evidence in finding overreaching, violation of fiduciary obligation, and unconscionable fee amounting to fraud. However, the defendant had no opportunity to contradict or combat this view of the evidence at the trial, as the theory upon which the decree is based took form subsequent to the presentation of evidence. The defendant was thus denied an opportunity to be heard upon and to defend against this charge and theory, and the trial court erred in failing to provide this opportunity before adopting this theory in its decree.

We have examined the many other contentions raised by defendant in this appeal, and find them each to be without merit.

The decree of the trial court is reversed and set aside, and the cause is remanded to the trial court for the reopening of the hearing to receive any additional pertinent evi-

dence of the parties relating to the matters herein reviewed, and for other and further proceedings in conformity with the views expressed in this opinion.

*Reversed and remanded, with directions.*