KAY H. CLAFLIN, Petitioner-Appellee, *v.* CHARLES E. CLAFLIN, Respondent-Appellant.

First District (1st Division)   No. 79-735

Opinion filed March 10, 1980.—Rehearing denied April 7, 1980.

Coffield, Ungaretti, Harris & Slavin, of Chicago (Robin J. Omahana, of counsel), for appellant.

No brief filed for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This divorce litigation involves construction of a property settlement agreement concerning the payment to Kay H. Claflin (petitioner) of maintenance and also support for three children by Charles E. Claflin (respondent). The trial court found the agreement was ambiguous. After hearing testimony the trial court found the payments in question were to continue regardless of the fact that certain children had attained majority. Respondent appeals.

■■ The petitioner-appellee has failed to file a brief in this court. We will decide the issues on the merits, as far as we are able under the record before us. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.

■■ The initial issue, not discussed in respondent's brief, is whether the Illinois Marriage and Dissolution of Marriage Act, effective October 1, 1977 (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*), applies here. We conclude this new legislation is effective here. No judgment had been entered on the subject matter of the within litigation at the time the new Act took effect. (See Ill. Rev. Stat. 1977, ch. 40, par. 801(b). Compare *West v. West* (1979), 76 Ill. 2d 226, 390 N.E.2d 880.) We will add that, in our opinion, the results hereinafter stated would be the same under the new divorce act or under the statute it supplanted.

On December 31, 1968, the parties, both represented by counsel, entered into a written property settlement agreement. Paragraph 2 of this agreement provided:

"The husband shall pay to the wife fifty per cent (50%) of his net annual income derived from all sources as and for her allowance for support and maintenance and that of the children. For purposes of this Agreement, 'net annual income' shall be defined as gross annual income less deductions for payment of Federal Income Taxes and Social Security Taxes. Said sum shall be payable in fifty-two (52) equal weekly installments payable on the Friday of each week following the effective date of this Agreement."

This agreement also provided for payment to petitioner of 50 percent of the new amount of all bonuses which respondent might receive. It provided respondent was to submit to petitioner a verified copy of his individual tax return on or before April 15 each year. Credit was to be allowed respondent if his payments during the previous year exceeded

the 50 percent mark and he was to make up any deficit. Minimum and maximum payments for any year were set at $10,000 and $22,500. On January 20, 1969, a judgment of divorce was entered which incorporated these provisions of the agreement.

It should be noted that on November 21, 1968, counsel for respondent wrote to counsel for petitioner and enclosed a preliminary draft of the property settlement agreement. This draft contained no mention of child support in its second paragraph. The draft was amended by the final agreement, above quoted, which added a specific provision that payments by respondent included child support.

The children of the parties are: Todd, born July 10, 1953 (21st birthday July 10, 1974); Bruce, born August 31, 1955 (21st birthday August 31, 1976); and Charles, born July 10, 1957 (21st birthday July 10, 1978).

On March 25, 1977, respondent filed a petition for an order clarifying or modifying his maintenance and child support obligations. The petition alleged the parties intended one-half of all payments by respondent were to constitute maintenance and one-sixth of all payments was for the support of each of the children. Respondent alleged that from time to time he had deducted, and petitioner had accepted, reduced payments as the children reached majority. Also, respondent had reduced payments at times when the children were living with him and he supported them.

On April 13, 1977, respondent requested that petitioner admit respondent's attorney wrote to petitioner's attorney on May 22, 1974, and stated the understanding of the parties that the settlement agreement was prepared so as "to maximize tax benefits" and the understanding of the parties was that as each of the children attained majority support payments would be reduced by one-sixth. Respondent was also asked to admit she was notified by her attorney of the contents of this letter shortly after its receipt and her attorney received no response from her concerning the contents. No response of any kind to this request was filed by petitioner. Ill. Rev. Stat. 1977, ch. 110A, par. 216(c).

On June 8, 1977, petitioner filed an answer to respondent's petition. This answer categorically denied the petition concerning the alleged intention of the parties.

On August 25, 1978, respondent propounded written interrogatories to petitioner regarding the date of her remarriage, if any, and other information on this subject. It appears from the record that petitioner did in fact remarry on or about April 12, 1978. Her present husband is one of her attorneys of record in this appeal. There seems to be some doubt about the exact date of remarriage. An affidavit by petitioner shows the date of remarriage as April 17, 1978. We will use that date in this opinion. Respondent took the position that petitioner had wilfully concealed this

fact from the court. On September 14, 1978, respondent filed a motion to hold petitioner in contempt for this reason.

On August 22, 1977, the trial court heard testimony on the theory that the property settlement agreement was ambiguous. In due course briefs were filed by both parties. On November 14, 1978, the able trial judge filed a memorandum opinion. The trial court found the agreement was ambiguous. The trial court correctly noted that the agreement does not state any specific percentage of respondent's obligation to be allocated to child support or the effect upon the obligation of respondent of emancipation of the children. The trial court concluded the payments in question were not to be diminished by reason of attainment of majority by the children or their temporary residence with respondent.

We note that at the time of the hearing the trial judge was apparently not aware of the remarriage of petitioner. That fact is not mentioned in his memorandum.

On November 17, 1978, the trial court entered an order which found petitioner had remarried on April 17, 1978. The order provided all of the payments above specified in the property agreement be terminated retroactively as of April 17, 1978. The trial court reserved for future consideration arrearages, if any, due petitioner prior to April 17, 1978; credit to respondent, if any, for payments made by him to petitioner after April 17, 1978; and the motion of respondent to hold petitioner in contempt. These reserved issues were continued generally. The order also provided respondent should furnish complete copies of his income tax returns for 1969 through 1977 with affidavits attesting to their correctness. However, on December 5, 1978, the trial court entered an order to the effect that payments to petitioner under the property settlement agreement are not diminished by reason of attainment of majority by the children or their temporary residence with the respondent. This appeal followed.

In this court, respondent concedes the agreement is ambiguous. Respondent contends the ruling of the trial judge is contrary to the evidence and to the law and the trial court erred in excluding evidence of petitioner's intent and refusing an offer of proof.

The gist of respondent's contention seems to be that he had the right unilaterally to reduce the payments due to petitioner as the children attained majority. It is correct as a general proposition that "the liability for support of a child generally continues during minority of the child [citation] and ceases upon the child's attainment of the age of 18." (*Horzely v. Horzely* (1979), 71 Ill. App. 3d 542, 546, 390 N.E.2d 28.) The pertinent statute provides that provisions for the support of a child are terminated by emancipation of the child unless otherwise agreed in

writing or in the judgment. (Ill. Rev. Stat. 1977, ch. 40, par. 510(c).) The same statute also provides payment of future maintenance is terminated on the remarriage of the party receiving maintenance. Ill. Rev. Stat. 1977, ch. 40, par. 510(b).

In addition, it has been repeatedly held that a party may not unilaterally terminate child-support payments when there is a change in circumstances. This conclusion is based upon the premise that modification of child-support payments is a judicial function and past due installments for child support are a vested right of the recipient. *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20, 390 N.E.2d 488; *Dunsky v. Dunsky* (1976), 40 Ill. App. 3d 845, 848, 353 N.E.2d 371.

We are obliged to disagree with the learned trial judge in his interpretation of the agreement. There is evidence, as above pointed out, and petitioner, by her lack of testimony on the point, has conceded, that a clear statement of the understanding between the parties and their attorneys was to the effect that half of the payments were intended as maintenance or alimony and the remaining one-half intended for child support. It would be indefensible and legally impossible to have a property settlement agreement where the welfare of three children is involved and make no provision for their support. See *Weber v. Weber* (1979), 77 Ill. App. 3d 383, 396 N.E.2d 43.

The agreement before us provides specifically that the payment was for support and maintenance "of the children." As above shown, these words were added to a preliminary draft of the agreement. There is no language in the agreement to the effect that the wife and not the husband would have the primary duty of supporting the children. In addition, we find in the record testimony by a member of the bar, who then acted as legal counsel for respondent, that the parties discussed the arrangement of 50 percent of the payment to be allocated to maintenance and 50 percent to child support and also child support would be reduced as the children reached majority. This understanding was reached prior to execution of the settlement agreement. Opposing counsel also testified on this point but merely stated he had no specific recollection of such a conversation. Opposing counsel conceded he had received the letter from respondent's counsel dated May 24, 1974, described above in respondent's motion for admissions of fact.

■■ We therefore construe the agreement to provide that the intent of the parties was 50 percent of the total payments by respondent would be considered alimony or maintenance for petitioner and the remaining 50 percent for child support with one-sixth of the total amount to abate as the children reached majority. However, this does not necessarily mean that we reach the result that the payments of child support ended

automatically to the extent of one-sixth as each of the three children attained majority. The above citation of authority precludes this. See *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20.

We cannot agree with the contention of respondent that petitioner is estopped to claim continuation of the payments. Even if a letter of the kind above described was sent to petitioner, the record is bare of any response by her which is strong enough to evidence an equitable estoppel. In short, we find no agreement by petitioner to waive payment or to accept a lesser amount and no change of position by respondent. We find the doctrine of estoppel not applicable. *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 21. See also *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 591, 323 N.E.2d 571.

There remain various points of differences between these parties. Problems arise with reference to the computation of any possible arrearage by respondent in making payments of child support. But, counterbalancing problems also arise with reference to the claim of respondent that he has overpaid petitioner by virtue of his lack of knowledge of the date of her remarriage. In our opinion, the equities of these parties will best be served by bringing about an end to this litigation. The following will, in our opinion, balance the equities on both sides of the ledger. The order appealed from dated November 17, 1978, is reversed. The cause is remanded with directions for the entry of the following orders:

(1) All liability of the respondent for payment of maintenance and child support under the property settlement agreement between the parties is terminated as of April 17, 1978.

(2) Liability of respondent for any prior arrearages which may have existed as of April 17, 1978, is hereby terminated.

(3) Petitioner shall not be liable to refund to respondent any possible overpayments which may have been made by respondent pursuant to the judgment for divorce.

(4) The motion of respondent to hold petitioner in contempt of court is denied.

For the reasons above stated, the order appealed from is thus reversed and the cause remanded for further proceedings consistent with the opinion of this court and the above directions.

Order reversed and cause remanded.

McGLOON and CAMPBELL, JJ., concur.