SUSAN K. LEWIS, a/k/a Susan K. Staub, Plaintiff-Appellant, *v.* ROBERT F. STAUB, Defendant-Appellee.

Fourth District    No. 16638

Opinion filed April 9, 1981.—Rehearing denied May 20, 1981.

L. Robert Mueller, of Blan Law Offices, of Danville, for appellant.

Thomas R. Smith, of Acton, Acton, Meyer, & Smith, of Danville, for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This appeal is centered around the question of whether a noncustodial parent may unilaterally reduce unallocated child-support payments upon the death of one of his minor children.

There is little dispute over the facts. The plaintiff Susan Lewis, formerly Susan Staub, and the defendant, Robert Staub, were married in 1963. They had two children, Patrick and Matthew. The parties were divorced on December 26, 1972. The divorce decree awarded custody of both children to plaintiff, and the defendant was ordered to pay the plaintiff $150 each month for child support. Specific amounts of the $150 were not allocated to the children; the $150 was a lump-sum payment for the benefit of both children.

On April 10, 1980, plaintiff filed a petition to increase child support and a petition for rule to show cause. After a rule to show cause was issued by the trial court, a hearing on the plaintiff's requests was held on July 10, 1980. At the hearing, the parties, by stipulation, agreed that future child-support payments would be modified to $30/week. The parties also stipulated that from August 1, 1975, up to the date of the hearing, the defendant had paid $4,350 in child support (an average of $75/month). If defendant would have paid $150/month, he would have paid the plaintiff $8,700, $4,350 more than what he actually paid her.

The hearing revealed that one of the parties' children, Matthew, was killed in a car wreck on August 1, 1975. Subsequent to Matthew's death, plaintiff received a letter dated December 23, 1975, from defendant which, in relevant part, stated:

"As you are aware I have been paying you for the last four months (Aug, Sep, Oct & Nov) for both boys. I have just received the proper authority to discontinue the full amount and in the future you will be receiving only half the amount.

Since the money has already been paid, I will not be sending another check until sometime in April for Patrick.

I hope this is in agreement with you. If not, please contact my lawyer, Mr. Thomas Smith there in Danville."

Plaintiff testified that she did not contact the defendant concerning the letter. Approximately two years later, during February 1978, the plaintiff's attorney contacted defendant's attorney concerning support and the possible adoption of Patrick by the plaintiff's new husband. However, at no point does the evidence suggest that the plaintiff complained about the reduced child-support payments until she initiated this suit.

After the defendant testified, the trial court ruled that the defendant was $1,450 in arrears, and ordered him to pay off this amount at the rate

of $10/week. Subsequently, the plaintiff filed a motion to reconsider, stating that she was entitled to $4,350. After a hearing on this motion, the trial court rescinded its previous order and held that the plaintiff was estopped from claiming arrearages for child support. It is from this order that the plaintiff appeals, claiming that she is entitled to $4,350. We agree with the plaintiff.

Defendant contends that the trial court's order denying the plaintiff any recovery was correct for three possible reasons: (1) The parties mutually modified the child support order; (2) the death of the parties' minor child terminated one-half of the defendant's child support obligation; and (3) the plaintiff is estopped from claiming past-due child support payments.

■■ Defendant contends that plaintiff's receipt of the letter set out above, and her subsequent acquiescence to the reduced payments until April 1980, shows that she agreed to the reduction. According to the defendant, the reduction of the child support payments was done with the "mutual assent" of both parties.

Defendant's reliance on contract law is misplaced. The record evinces that the plaintiff did not receive any consideration for the reduced payments. Moreover, the letter shows that the decision to reduce child support payments was made by the defendant without assent from the plaintiff. In short, defendant's contention that the plaintiff implicitly accepted his offer to reduce child-support payments is untenable.

Alternatively, defendant argues that the death of Matthew terminated one-half of his child support obligation. Therefore, the defendant extrapolates that he had the right to reduce his child support payments without prior court approval and, thus, he owes the plaintiff nothing.

■■ A discussion of the defendant's argument with respect to this issue would not be fruitful because the defendant fails to explain why the death of one child should allow the parent/obligor to unilaterally reduce *pro rata* the amount of *unallocated* child-support payments. Undoubtedly, the defendant is correct in his assertion that the death of a child terminates any obligation to support that child. However, in light of *Finley v. Finley* (1980), 81 Ill. 2d 317, 410 N.E.2d 12, it is clear that the death of one child does not give the parent/obligor the right to unilaterally reduce unallocated child support payments.

In *Finley*, the Illinois Supreme Court held that a parent may not unilaterally reduce the amount of *unallocated* child support payments *pro rata* as each child is emancipated, notwithstanding the language of section 510(c) of the Illinois Marriage and Dissolution of Marriage Act (hereinafter Act) (Ill. Rev. Stat. 1979, ch. 40, par. 510(c)). In relevant part, section 510(c) of the Act states:

"Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by the emancipation of the child, * * *."

The court stated that the language in section 510(c) was simply declarative of the common rule that the obligation of a parent to support a child terminates upon emancipation. However, the court noted that this conclusion did not resolve the principal issue of the case, which was whether a parent could voluntarily assume that unallocated child support payments were to be divided equally among the children, thereby allowing a unilateral *pro rata* reduction of child support payments upon a child's emancipation.

Likewise, we do not doubt that the obligation to support a child terminates upon his death. However, as in *Finley*, this fact is not determinative of the question whether a parent may unilaterally reduce his child support payments *pro rata* upon the death of one of his children.

The court in *Finley* summed up the policy reasons which dictated its holding that a parent could not unilaterally reduce the amount of child support payments *pro rata* as each child was emancipated. The court stated:

"Some of the cases reason that a support order is entered upon a consideration of several factors, which include the financial needs of the children and the resources of the noncustodial parent (Ill. Rev. Stat. 1977, ch. 40, pars. 505(1), (5)). Since the ability of the parent to pay is a factor under consideration, the amount awarded may not adequately provide for the needs of the children. Thus, as the number of children to benefit under the award decreases, the original award may more accurately come to reflect the needs of the remaining children. [Citations.]

Also, as stated in some cases, a further factor to be considered in the award of child support is that of the physical, emotional and educational needs of the individual child (Ill. Rev. Stat. 1977, ch. 40, par. 505(4)). To allow the obligor-parent to equally divide the support among the children would be in dereliction of the legislative guideline set forth for the determination of the proper amount to be paid as child support. [Citations.] Furthermore, the unilateral reduction of child-support payments constitutes a modification of the support order. The modification of such payments is solely a judicial function which is to be administered only by the court and in its discretion. (See *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20.) It is the function of the court to determine whether there should be a *pro rata* reduction in lump-sum periodic support payments when one of several children is emancipated, or whether other equitable considerations require that the reduction be a

lower amount, or in fact whether there should be any reduction in the payments. Automatic reduction in support payments in a case such as the one before us constitutes an infringement upon the discretionary powers of the court to modify an award. [Citation.] The responsible parent should petition the court for a judicial determination of the amount the support payments should be reduced due to changed circumstances. (See Ill. Rev. Stat. 1977, ch. 40, par. 510(a).)" 81 Ill. 2d 317, 328-29, 410 N.E.2d 12, 17-18.

The reasons set forth in *Finley* are equally applicable to the case at bar. Children, being individuals, have different interests and needs. Thus, one cannot assume that the amount of an unallocated child support payment should be equally divided among the children. As pointed out by *Finley* to so assume one would have to ignore the legislative guideline set for the determination of the proper amount to be paid as child support. Thus, when a child dies, as when a child is emancipated, a consideration of the individual needs of the remaining minor children dictate that the support payments may not be unilaterally reduced.

■■ Even if the children's needs were equal, a parent should not be able to unilaterally reduce the amount of child support *pro rata* upon the death of a child because support awards are also based upon the parent's ability to pay. Indeed, if the original support payments did not satisfy the children's needs, then it does not follow that this original amount should be reduced upon the death of one of the children. This is especially true if the parent's ability to support his children has increased since the original award.

■■ Finally, whether a child is emancipated, or whether a child dies, the modification of support payments is exclusively a judicial function. Thus, for the reasons discussed, we hold that the death of a minor child does not give the parent/obligor the right to unilaterally reduce child support payments.

■■ The trial court ruled, and the defendant argues, that the plaintiff is estopped from claiming child support arrearage. However, equitable estoppel is not an appropriate defense in this case. In *Dill v. Widman* (1952), 413 Ill. 448, 455-56, 109 N.E.2d 765, 769, the Illinois Supreme Court set forth the following definition of equitable estoppel:

"The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts."

Among other deficiencies in his estoppel argument, the defendant does not point to any acts of the plaintiff that he relied upon as authority to reduce the child support payments. In fact, the defendant's letter shows that the defendant's decision to reduce child support payments was induced by the advice of a third party.

For the foregoing reasons, the judgment of the trial court is reversed. The right to past-due installments of child support constitutes a vested right which may not be reduced or eliminated by a court absent a valid defense. (See *Ellingwood v. Ellingwood* (1975), 25 Ill. App. 3d 587, 323 N.E.2d 571.) Therefore, upon remandment, the trial court shall enter a judgment in favor of the plaintiff in the amount of $4,350, the amount of child support the plaintiff did not receive because of the defendant's unilateral reduction.

Reversed and remanded with directions.

WEBBER and MILLS, JJ., concur.