*In re* MARRIAGE OF TONI D. ERICKSON, a/k/a Toni D. Flesvig, Petitioner-Appellant and ALAN R. ERICKSON, Respondent-Appellee.

Second District   No. 84—0666

Opinion filed September 23, 1985.

UNVERZAGT, J., dissenting.

Gordon T. Trapp and Zachary M. Bravos, both of Bravos & Trapp, of Wheaton, for appellant.

John J. Burek, of Burek & Field, of Wheaton, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Petitioner, Toni Erickson, currently known as Toni Flesvig, appeals from certain orders the circuit court of Du Page County entered in this post-dissolution proceeding. She raises four assignments of error in this court: (1) the trial court abused its discretion when it ordered respondent, Alan Erickson, to pay her $430 per month for child support; (2) a recent amendment to section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 505(a)), which took effect during the pendency of this appeal, requires that the cause be remanded for a redetermination of the child support; (3) the court below erred when it dismissed petitioner's petition for a rule to show cause; and (4) the trial court abused its discretion when it ordered respondent to pay only

$445 of the fees of counsel the petitioner incurred in the post-dissolution matter.

On December 30, 1980, petitioner filed a petition for dissolution of marriage. Respondent filed a counterpetition for dissolution of marriage, which the trial court dismissed at his request. On September 10, 1982, the court below entered a judgment dissolving the parties' marriage. In its order, the court awarded custody of the parties' minor child to petitioner; ordered respondent to pay her $1,000 per month in unallocated maintenance and child support for the first 24 months and, thereafter, $800 per month as unallocated maintenance and support until the child became 18 years old; and divided the parties' marital property. In particular, among other things, the court awarded petitioner the former marital home, situated in Glen Ellyn, Illinois, and respondent a condominium that was located in New Hampshire. Also, the trial court ordered each party to pay one-half of the fees of counsel the petitioner incurred.

On February 8, 1984, respondent filed a petition for a redetermination or modification of unallocated maintenance and child support. The petition alleged that petitioner had remarried on November 20, 1983, and requested that the court eliminate maintenance as of November 20, 1983, and enter an award of support for the minor child.

Six days later, petitioner filed a petition for an order requiring respondent to show cause why he should not be held in contempt of court for his failure to pay the full $1,000 monthly sum in unallocated maintenance and child support. In her petition, petitioner admitted that she had remarried on November 20, 1983, and stated further that respondent had unilaterally reduced the monthly payment in question from $1,000 to $400 as of December 1, 1983. That same day, the trial court entered an order requiring respondent to show cause why he should not be held in contempt of court as a result of his failure to pay the $1,000 monthly sum for unallocated maintenance and support.

On May 23, 1984, the trial court held a hearing to adjudicate these matters. The evidence adduced at that time established that petitioner called respondent on November 17, 1983, to inform him that she was going to be remarried three days later. Petitioner was remarried on November 20. Respondent related that he tried to resolve the question of the amount of unallocated maintenance and support with his ex-wife. However, petitioner denied that respondent ever contacted her regarding this matter.

Prior to December 1, 1983, respondent had paid the full $1,000 monthly sum of unallocated maintenance and support. On that date,

without a court order, he unilaterally reduced his monthly payment from $1,000 to $400; he paid petitioner the reduced amount from that date until the time of the instant hearing. According to petitioner, respondent was in arrears in the sum of $3,900 regarding the payment of unallocated maintenance and support. In addition, she admitted that she did not inform the court that she had remarried.

During the course of their marriage, the parties had one child, who was almost 16 years old at the time of the hearing. Respondent was self-employed as a sales representative for Techni-Cal of Camrio, California. In this position, he was guaranteed a monthly draw or gross salary of $4,500. However, he was required to repay his monthly draw from his sales commissions. In 1983, he drew $45,000 as salary, but earned only $15,332 in commission, leaving a deficit of $29,667. During the first five months of 1984, he drew $22,500 in salary, but made only $5,529 in commissions, for a debit of $16,170. The total amount he owes Techni-Cal as a result of those deficits is $46,638. Although he had not yet filed an income tax return for 1983, because he had received an extension of time within which to file, he stated that his gross salary for 1983 was $54,389. He related, in addition, that he incurred $17,000 in work-related expenses.

Respondent sold the condominium he owned in New Hampshire and experienced a $7,000 loss as a result of the sale. Currently, he does not own any real estate, a car, stocks, or bonds. However respondent has a checking account with a balance of $218. Also, he owns a sailboat that is encumbered with a loan in the sum of $29,900. Including this debt, respondent has existing debts amounting to $49,860. Respondent, who has remarried, has monthly expenses of $4,607. His current wife earns an annual gross salary of $25,500.

In March 1983, petitioner terminated her employment due to stress; at that time, she was making $12,000 per year. Recently, she has been looking for new employment, without success. Neither she nor her son has any assets, except the $1,500 she has in her checking account.

Petitioner and her son currently reside with her new husband, Robert Flesvig, and his son. Before moving in with her current spouse, she sold the marital home which the trial court had awarded her in the decree of dissolution. She related that her projected annual monthly expenses were $943, while those of her child amounted to $858. Based on those calculations, she requested $800 per month in the form of child support.

She listed as specific expenses for both herself and her child one-quarter ($88.35) of the monthly real estate taxes owing on her hus-

band's home and one-quarter ($290.25) of the monthly mortgage payment due on Mr. Flesvig's residence. The testimony established that Mr. Flesvig owned the home prior to marriage to the petitioner and that he deducted from his income tax the interest payments associated with the mortgage. His marriage to petitioner did not increase either his monthly mortgage payment or his real estate tax liability. Petitioner did not know whether the title to her husband's home was in her name.

In 1983, Robert Flesvig received total wages in the sum of $36,922. His adjusted gross income for that year amounted to $34,690.

In its order of June 18, 1984, the trial court determined that, due to petitioner's remarriage, respondent was absolved from making maintenance payments from the date of her remarriage, November 20, 1983. Accordingly, the trial court ordered that maintenance was terminated on the date of her remarriage. In addition, the court modified the original judgment of dissolution of marriage by requiring respondent to pay monthly child support in the sum of $430 and made the support order effective *nunc pro tunc* to November 20, 1983. Also, the court decreed that the substance of the rest of his order rendered moot petitioner's petition for a rule to show cause and, therefore, declined to issue the rule.

Approximately two weeks later, petitioner filed a petition for the payment of the fees of counsel she incurred in the post-dissolution proceeding. After respondent filed a response to the petition for fees, the trial court held a hearing on July 3, 1984, to adjudicate the matter. Petitioner sought fees in the amount of $1,753.10. However, the court determined that reasonable fees of counsel were $445. After declaring that respondent had a far greater ability to pay the fees than did petitioner, the court ordered him to pay this amount. Petitioner filed a timely notice of appeal.

■ Petitioner's first contention in this court is that the trial court abused its discretion when it decreed that respondent was obligated to pay petitioner $430 per month for child support. Her argument is that the amount of support the court below ordered her ex-husband to pay is inadequate.

Originally, on September 10, 1982, the trial court entered an order that dissolved the parties' marriage and awarded petitioner $1,000 per month for unallocated maintenance and child support. Subsequently, after respondent had filed a petition for a redetermination or modification of the award of unallocated maintenance and support, the court below entered an order on June 18, 1984, that terminated

maintenance as of the date of the petitioner's remarriage, November 20, 1983. In addition, the court modified its original order by requiring the respondent to pay $430 per month for child support and made the support order effective *nunc pro tunc* to November 20, 1983. We conclude from these facts that the court's second order, when viewed in its entirety, is properly deemed to be a modification of child support under section 510(a) of the Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)). See, *e.g., Finley v. Finley* (1980), 81 Ill. 2d 317, 329; *Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 505, 424 N.E.2d 714, 717; *Lewis v. Staub* (1981), 95 Ill. App. 3d 243, 247, 419 N.E.2d 1223, 1226.

In adjudicating a petition for a modification of child support, the trial court considers the same factors it weighs, under section 505(a) of the Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 505(a)), when it formulates an original support order. (*In re Marriage of Butler* (1982), 106 Ill. App. 3d 831, 836-37, 436 N.E.2d 561, 565; *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 682-83, 426 N.E.2d 246, 249; Ill. Ann. Stat., ch. 40, par. 510(a), Historical & Practice Notes, at 699 (Smith-Hurd 1980).) Both the initial award of child support and the adjudication of a modification of child support rest within the sound discretion of the trial court, whose decisions in these matters will not be reversed in the absence of an abuse of discretion. *In re Marriage of Butler* (1982), 106 Ill. App. 3d 831, 836-37, 436 N.E.2d 561, 565.

In an exhibit petitioner introduced at the hearing, held in this matter, she calculated that the parties' minor child incurred monthly expenses of $858.06. Further, the exhibit stated that a reasonable amount of support for the one child was $800 per month. By contrast, the trial court awarded petitioner $430 per month for child support. We believe that the trial court did not abuse its discretion when it entered the order awarding respondent only $430 per month.

Respondent listed as expenses the child's one-quarter ($88.35) share of the realty taxes that Mr. Flesvig owed on his home and the minor's one-quarter portion ($290.25) of Mr. Flesvig's monthly mortgage payment. However, Mr. Flesvig admitted that he owned the home and that his marriage to petitioner did not increase either his monthly mortgage payment or his real estate tax liability. Furthermore, there is no evidence that either petitioner or her son was also an owner of the residence or otherwise legally obligated for the payment of the real estate taxes or the mortgage. Accordingly, the trial court could have concluded, with ample justification, that these two items were improperly listed as the child's expenses. Subtracting this combined total (378.60) from the amount petitioner listed as reason-

able child support ($800) leaves the child's resultant monthly expenses at approximately $422, very close to the court's award of $430. We also note that $430 is approximately one-half the $856 that petitioner testified was required for the minor's monthly support. The financial responsibility for the support of a child is the obligation of both parents. (*In re Marriage of Wentink* (1984), 132 Ill. App. 3d 71, 80, 476 N.E.2d 1109, 1115.) Therefore, based upon these factors and an examination of the elements set forth in section 505(a) of the Marriage Act as they relate to the facts of this case, we conclude that the trial court did not abuse its discretion in entering the instant support order.

■ Petitioner argues, in addition, that the trial court lacked sufficient evidence of respondent's income upon which to base the current order of child support. Petitioner did not raise this contention in the trial court and made no objection on this basis when the court below entered its order. Petitioner acquiesced in the manner in which the hearing was conducted and cannot raise this matter for the first time on appeal. *Cf. Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 543, and *McKinnie v. Lane* (1907), 230 Ill. 544, 548 (a party may not complain of an error to which she consented).

In any event, the trial court had sufficient evidence before it of respondent's financial condition, including a good approximation of his 1983 income. Although respondent's tax returns for 1983 were not available due to the fact that he obtained an extension of time in which to file them, the court was presented with evidence that respondent earned roughly $54,000 that year and had $17,000 in business expenses. In addition, the record reflects the presentation of testimony concerning respondent's assets and the property he owned.

■ Petitioner next argues that the trial court erred when it dismissed her petition for a rule to show cause. Relying principally upon section 510(a) of the Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 510(a)), she maintains that the trial court erroneously modified the support order *nunc pro tunc* to November 20, 1983, a date prior to the filing of respondent's petition to terminate maintenance and modify support.

Section 510(a) of the Marriage Act prescribes that, with one exception that is not applicable here, the court may modify the maintenance or support provisions of any judgment "only as to installments accruing subsequent to the filing of the motion for modification * * *." (Ill. Rev. Stat. 1983, ch. 40, par. 510(a).) Section 510(b) of the Marriage Act provides that "the obligation to pay future maintenance is terminated upon * * * the remarriage of the party receiving mainte-

nance," unless the parties agree otherwise in a written separation agreement (Ill. Rev. Stat. 1983, ch. 40, par. 510(b)). *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 533; *In re Marriage of Clarke* (1984), 125 Ill. App. 3d 432, 435, 465 N.E.2d 975, 977.

The well-settled rule in this State is that past-due installments of child support are the vested right of the designated recipient; thus, the court lacks the authority to modify those amounts that have already accrued. (*Hoos v. Hoos* (1980), 86 Ill. App. 3d 817, 821, 408 N.E.2d 752, 755; *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20, 390 N.E.2d 488, 490.) Furthermore, a party may not unilaterally terminate child support payments. (*In re Marriage of Homan* (1984), 126 Ill. App. 3d 133, 135, 466 N.E.2d 1289, 1290-92; *Hoos v. Hoos* (1980), 86 Ill. App. 3d 817, 821, 408 N.E.2d 752, 755; *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20, 390 N.E.2d 488, 490.) The modification of such payments is a judicial function; the court's decision to modify the payment of child support is discretionary in nature and only takes effect prospectively. *Hoos v. Hoos* (1980), 86 Ill. App. 3d 817, 821, 408 N.E.2d 752, 755; *Jozwick v. Jozwick* (1979), 72 Ill. App. 3d 17, 20, 390 N.E.2d 488, 490.

It is equally manifest that the remarriage of the recipient spouse does not automatically reduce an unallocated award of maintenance and child support; rather, as is required in other cases where a modification is sought, the party desiring the reduction must petition the court to modify its prior decree. (*Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 505, 424 N.E.2d 714, 717.) In that instance, even though a parent's obligation to support a child terminates upon emancipation, the parent responsible for tendering the payments may not make a unilateral *pro rata* reduction in the amount of unallocated child support payments upon one child's emancipation absent an agreement to the contrary. (*Finley v. Finley* (1980), 81 Ill. 2d 317, 328-29.) Similarly, it is clear that the death of one child does not give the obligor-parent the right to reduce unilaterally such unallocated child support payments. *Lewis v. Staub* (1981), 95 Ill. App. 3d 243, 245, 419 N.E.2d 1223, 1225.

In the case at bar, petitioner remarried on November 20, 1983; respondent became aware of her pending remarriage on November 17, 1983, and as of December 1, 1983, unilaterally reduced the unallocated monthly award of maintenance and child support from $1,000 to $400. On February 8, 1984, respondent filed a petition to modify the trial court's earlier order of dissolution; he sought a termination of maintenance and requested that the trial court determine the amount of child support he was required to pay his ex-wife. On June 18, 1984,

the trial court absolved respondent from making maintenance payments from the date of petitioner's remarriage and ordered that maintenance was terminated as of November 20, 1983. Also, the court modified the original decree that dissolved the marriage by requiring respondent to make monthly child support payments in the amount of $430 and made the support order effective *nunc pro tunc* to November 20, 1983. Lastly, the court below denied petitioner's petition for a rule to show cause.

■■ A *nunc pro tunc* order is a decree the court enters in the present to make the record speak for something that was done previously. For example, the court may employ such an order to correct a record that omitted an order that the court made earlier. However, if there was no earlier order to which a *nunc pro tunc* order could relate back, then the use of this type of order is improper. (*Harner v. Harner* (1982), 105 Ill. App. 3d 430, 436, 434 N.E.2d 465, 470.) In the current case, the utilization of a *nunc pro tunc* order was inappropriate because there was no earlier order modifying the initial maintenance and support decree that was omitted from the record. However, the court could have modified its earlier order of unallocated maintenance and support and made the modified order retroactive. This would appear to be an appropriate circumstance for this court to construe the trial court's order as a retroactive modification of the original order. See *Harner v. Harner* (1982), 105 Ill. App. 3d 430, 436, 434 N.E.2d 465, 470.

The remaining and more difficult inquiry is whether the trial court's order should be retroactive to November 20, 1983, the date of the petitioner's remarriage, or February 8, 1984, the date the respondent filed his petition to terminate maintenance. Based on the jurisprudence cited above, it is clear, under section 510(a) of the Marriage Act, that if this case implicated solely an order of modification of unallocated maintenance or child support, or both, then the trial court's order of modification would be effective on February 8, 1984. However, the present case involved a hybrid order in which maintenance was terminated, under section 510(b) of the Marriage Act, and child support was modified pursuant to section 510(a). Apparently, the trial court implicitly divided the previously unallocated award into separate awards for child support and maintenance, a proper procedure (*Potocki v. Potocki* (1981), 98 Ill. App. 3d 501, 504, 424 N.E.2d 714, 716-17), and then terminated the maintenance portion of the previous order and entered the modified support provision, making both determinations effective on November 20, 1983.

■■ Based on the particular facts of this case, we conclude that

the trial court correctly determined that maintenance be terminated on November 20, 1983, and, further, that the modified monthly child support payment of $430 be retroactive to November 20. (See, *e.g.*, *Claflin v. Claflin* (1980), 82 Ill. App. 3d 246, 402 N.E.2d 673, *cert. denied* (1980), 449 U.S. 1015, 66 L. Ed. 2d 474, 101 S. Ct. 575.) A holding that the trial court's order should be effective on February 8, 1984, would be unjust and, therefore, an unwarranted result for two reasons. First, it would violate the express language of section 510(b), which states that respondent's obligation to pay maintenance was extinguished upon the remarriage of petitioner. Secondly, although respondent did terminate 60% of his monthly unallocated payment, he did nonetheless file a petition in which he sought both a termination of maintenance and a determination of his current support obligation. Pursuant to this conclusion, the court below also correctly denied petitioner's petition for a rule to show cause.

### ATTORNEY FEES

■ Petitioner asserts that the trial court abused its discretion when it ordered the respondent to pay only $445 of the $1,753.10 in fees the petitioner incurred in this cause. She argues that the court's award is inadequate. Accordingly, she requests that the court reverse the trial court's order and remand the cause or, alternatively, enter an appropriate award of fees in this court.

Ordinarily, the party for whom legal services were rendered bears the responsibility of paying the fees of counsel. (*In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 40, 429 N.E.2d 594, 597.) However, section 508(a) of the Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 508(a)) provides that after the court considers the relative financial resources of the parties, it may order a party to pay the fees of counsel and costs that the other spouse necessarily incurred. (*In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 109-10, 468 N.E.2d 490, 495.) The court may order an ex-spouse to pay such fees where the party seeking payment of fees demonstrates her own financial inability to pay them and the ability of her ex-spouse to pay the fees. (*In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1027, 471 N.E.2d 1008, 1017; *In re Marriage of Carini* (1983), 112 Ill. App. 3d 375, 383, 445 N.E.2d 412, 418.) It is clear that the inability of a party to pay fees need not be tantamount to destitution. *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1027, 471 N.E.2d 1008, 1017; *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 110, 468 N.E.2d 490, 495-96.

The amount of the award of fees depends upon whether the work

was reasonably required or necessary for the proper performance of legal services in the particular case. (*In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 110-11, 468 N.E.2d 490, 496.) The fees that are awarded should provide for fair compensation. (*In re Marriage of Burrows* (1984), 126 Ill. App. 3d 752, 758, 467 N.E.2d 987, 992.) In making an award of fees, the trial court should consider the attorney's skill and standing; the nature of the controversy and the novelty and difficulty of the issues the case presents; the importance of the subject matter from the perspective of family law; the degree of responsibility involved in the management of the case; the time required and labor expended; the customary charge in the community; and the benefits the client derived from the representation. (*In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 111, 468 N.E.2d 490, 496; *In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 41, 429 N.E.2d·594.) The court is not bound to accept the attorney's opinion of what constitutes a reasonable fee, but must inquire into all the necessary factors. (*In re Marriage of Ransom* (1981), 102 Ill. App. 3d 38, 41, 429 N.E.2d 594, 597-98.) The decision regarding the allowance of fees rests within the sound discretion of the trial court, whose award will not be overturned unless the court abused its discretion. *In re Marriage of Smith* (1984), 128 Ill. App. 3d 1017, 1027, 471 N.E.2d 1008, 1017; *In re Marriage of Melnick* (1984), 127 Ill. App. 3d 102, 110, 468 N.E.2d 490, 495; *In re Marriage of Burrows* (1984), 126 Ill. App. 3d 752, 758, 467 N.E.2d 987, 992.

In the case at bar, the trial court concluded, after holding a hearing concerning petitioner's petition for fees, that the parties had disparate abilities to pay the fees of petitioner's counsel. The court determined that respondent's ability to pay the fees was far greater than that of petitioner. Also, the court decided that a fair and reasonable amount of fees in the present case was $445. The court reached this conclusion based upon its estimation of the experience of counsel, the novelty of the question involved, "what was presented in this case," and the conduct of the lawyers.

After careful consideration of the facts and circumstances involved here, we conclude that the trial court did not abuse its discretion when it determined that reasonable fees in this case were $445 and ordered respondent to pay only that amount. In the petition for fees, counsel for the petitioner admitted that the nature of the controversy was relatively simple, that the case presented no novel or difficult question, and that there was no important family law issue involved. In light of these factors, as well as the trial court's familiarity with counsel and the presentation of the case, we find no abuse of dis-

cretion. See, *e.g., In re Marriage of Burrows* (1984), 126 Ill. App. 3d 752, 758-59, 467 N.E.2d 987, 992.

RECENT AMENDMENT TO SECTION 505(a)

Petitioner argues next that a recent amendment to section 505(a) of the Marriage Act (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 505(a)), which took effect on September 12, 1984, during the pendency of this appeal, requires that the cause be remanded for a redetermination of the appropriate amount of child support respondent must pay. Section 505(a), as amended, provides that in cases involving child support alone, the court shall make the initial determination of the minimum amount of support based upon the number of children and a stated percentage of the net income of the responsible parent. A similar provision governs the initial award of child support and maintenance in cases involving both items.

■ In support of her position, the petitioner relies upon the general rule that when the legislature changes the law while an appeal is pending, the court of review will apply the law as it exists at the time of the decision, rather than the law that existed at the time the trial court entered judgment. (*E.g., Rios v. Jones* (1976), 63 Ill. 2d 488, 494-95, *appeal dismissed* (1976), 429 U.S. 934, 50 L. Ed. 2d 304, 97 S. Ct. 346; *Krug-Etheridge v. Krug* (1982), 111 Ill. App. 3d 780, 783, 444 N.E.2d 690, 692.) Respondent, without citation to any authority, disagrees, contending that this proceeding is governed by section 510 (Ill. Rev. Stat. 1983, ch. 40, par. 510) and that the amended section 505(a) is not implicated. However, respondent is in error. The trial court is to consider the same factors in considering modifying the amount of child support as it considers in formulating an original support order. (*In re Marriage of Lasota* (1984), 125 Ill. App. 3d 37, 465 N.E.2d 649; *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 426 N.E.2d 246; see Ill. Ann. Stat., ch. 40, par. 510, Historical & Practice Notes, at 192-93 (Smith-Hurd Supp. 1985).) Those factors are found in section 505(a) (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 505(a)).

Thus, it would appear that this cause must be remanded for a computation of the minimum amount of child support required by the 1984 amendment to section 505(a) to determine whether the amount of child support awarded by the trial court met the minimum established therein.

However, the remand relates only to the amounts of child support from September 12, 1984, the effective date of the amendment. The reviewing courts apply the law as it exists at the time of its decision, rather than at the time of the judgment of the lower court. (*Cronin v.*

*Lindberg* (1976), 66 Ill. 2d 47.) Thus the rule that legislative enactments are construed as prospective and not retrospective absent express language to the contrary (*Village of Wilsonville v. SCA Services, Inc.* (1981), 86 Ill. 2d 1), causes us to conclude that Public Act 83—1404 (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 505(a)), effective September 12, 1984, is prospective only in its effect. We affirm the award of child support in every other regard.

In sum we affirm the judgment of the circuit court of Du Page County in every regard except that we reverse that part of the judgment applicable to the period subsequent to September 12, 1984. We remand the cause for calculation of the minimum award of child support now provided for by section 505(a). To the extent the present award is less than the minimum award for the period commencing September 12, 1984, it shall be increased to such minimum award.

Affirmed in part, reversed in part and remanded.

SCHNAKE, J., concurs.

JUSTICE UNVERZAGT, dissenting:

I concur in the judgment of the majority on all issues except the decision to remand the cause for calculation of the minimum award of child support.

The majority decides that the recent amendment to section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat., 1984 Supp., ch. 40, par. 505(a)), which took effect on September 12, 1984, during the pendency of this appeal, requires that the cause be remanded for a redetermination of the appropriate amount of child support the respondent must pay subsequent to that date. Section 505(a), as amended, provides that in cases involving child support alone, the court shall make the initial determination of the minimum amount of support based upon the number of children and a stated percentage of the net income of the responsible parent. A similar provision governs the initial award of child support and maintenance in cases involving both items.

New section 505(a) governs cases in which the trial court is making an initial determination of child support or an initial award of child support and maintenance, not, as occurred here, the termination of maintenance and the modification of child support. Secondly, even if section 505(a) were to apply to the facts of this case, remanding for a new hearing is particularly inappropriate, because the trial court correctly applied the existing law. I submit that this is not a case in

which the amendment in question evinces an intent on the legislature's part to clarify the original legislative purpose of the prior version of section 505(a). (*Cf. Krug-Etheridge v. Krug* (1982), 111 Ill. App. 3d 780, 783.) The majority is remanding the cause for a new determination of child support in accordance with a statutory test that did not come into effect until months after the trial court rendered its judgment. Such an application of the statute defies common sense and is not warranted here. See *In re Marriage of Olson* (1983), 96 Ill. 2d 432, 442.

Furthermore, a cursory review of the evidence will reveal that the trial court's determination of dollar amounts is very close to what can be achieved by another hearing. I do not think litigants should be burdened with the costs and expenses of a hearing the majority now requires where no good can be accomplished.