*In re* MARRIAGE OF JOHN P. CLARKE, Petitioner-Appellee, and ROBERTA J. CLARKE, Respondent-Appellant.

Fourth District   No. 4—83—0695.

Opinion filed June 25, 1984.

Michael B. Metnick, of Metnick & Barewin, of Springfield, for appellant.

Henry C. Hagen, of Drach & Deffenbaugh, P.C., of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

■ We hold here that in a proceeding under the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 101 *et seq.*) a court does not have authority either (1) to order a spouse or the estate of that spouse to make maintenance payments for a period extending beyond the death of that spouse, or (2) to require that spouse to secure income in lieu of maintenance to the other spouse after death of the first spouse by making the other spouse or a trustee for the other spouse the beneficiary of (a) insurance policies on the life of the first spouse, or (b) other contracts payable at the death of the first spouse.

The instant proceeding began on July 7, 1982, when petitioner, John P. Clarke, filed suit in the circuit court of Sangamon County seeking dissolution of his marriage to respondent, Roberta J. Clarke. On September 16, 1983, that court entered a judgment of dissolution which incorporated by reference a detailed property settlement agreement which included an order whereby petitioner was to pay respondent $3,500 per month in unallocated maintenance. The agreement provided for a certain cash payment by petitioner to respondent and determined the rights in the marital residence and certain investments. By the terms of the agreement petitioner was required to designate the parties' minor daughters as primary beneficiaries of a $100,000 whole life insurance policy maintained by petitioner's employer on petitioner's life. The purpose for this transaction was stated to be to "assure [the daughters'] support and payment of their educational expenses through four years of college or vocational school." Petitioner was given the option of designating a different beneficiary upon completion of the daughters' schooling.

We need not explain the other provisions of the comprehensive plan. However, the parties were not able to agree upon all matters and, accordingly, provided in article XVIII of the agreement to "submit" certain matters, upon which they could not agree, "to the court for determination." Significant on appeal is paragraph 2 which lists as a matter for determination, the following:

"Whether husband shall be ordered to provide any security to wife for the payment of the unallocated maintenance in the event of his death and, if so, whether the security should be:

[any one of various term and whole life insurance policies on petitioner's life] or *** designation as beneficiary on [petitioner's] Deferred Compensation Contracts."

Paragraph 2 also sought determination as to which party should pay the premiums on any policy used for security and as to how long that party should pay the premiums.

An evidentiary hearing was held on August 18, 1983, and, on September 16, 1983, a judgment was entered which dissolved the marriage, awarded joint custody of the parties' two children, approved the property settlement, divided the property and, among other determinations, refused to order petitioner to give security to respondent for unallocated maintenance in the event of his death. Respondent has appealed contending that the court erred (1) in allegedly failing to award two life insurance policies to either party, and (2) in refusing to require the security for unallocated maintenance requested by respondent. We affirm.

■ The record clearly shows that the two life insurance policies in question, policies issued by Massachusetts Mutual Insurance Company having a total face value of $20,000 and a combined cash surrender value of $6,800, were awarded by the September 16, 1983, judgment to petitioner. We need give no further consideration to that contention.

■ In regard to respondent's assertion that she was entitled to the security for unallocated maintenance, she maintains that: (1) the court had authority to award such maintenance, and (2) the court breached its discretion in refusing to do so. Because of our previously stated ruling that the court had no authority to make such an award, we need not consider whether a breach of discretion occurred.

The parties agree that, when sitting in a dissolution proceeding, a circuit court cannot properly exercise general equity powers (*In re Marriage of Garrison* (1981), 99 Ill. App. 3d 717, 425 N.E.2d 518), but must look to the Act for authority. At all times pertinent, section 510(b) of the Act has provided:

"(b) Unless otherwise agreed by the parties in a written separation agreement set forth in the judgment or *otherwise approved by the court*, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 40, par. 501(b).)

Here, article III, paragraph 2 of the agreement expressly provides

that the unallocated maintenance should cease upon the death of either party. Nevertheless, the parties' reservation in article XVIII, paragraph 2 of the agreement of the issue of whether petitioner should be required to give security for post-death unallocated maintenance indicated their intention to seek a court determination as to whether unallocated maintenance beyond that agreed to could and should be awarded by the court.

Respondent maintains that section 510(b) provides authority for the court to order maintenance after petitioner's death and to order petitioner to give security to enforce it. She interprets section 510(b) to authorize such maintenance if (1) "agreed to by the parties in a written separation agreement set forth in the judgment," or (2) if "otherwise" ordered by the court. She contends that "approved" means the same as ordered and that the phrase "otherwise approved by the court" does not modify, in the alternative, the phrase "written separation agreement." She contends that the section envisions a method of providing for post-death maintenance that is an alternative to that based on agreement of the parties.

We disagree. The word "approve" is defined by Black's Law Dictionary as follows: "To be satisfied with; to confirm, ratify, sanction, or consent to some act or thing *done by another*." (Emphasis added.) (Black's Law Dictionary 94 (5th ed. 1979).) The word is said to be distinguished from the word "authorize." Within the context of section 510(b) there must be a preexisting "act" or "thing" for the court to approve. That "act" or "thing" is the agreement of the parties. The court's authority in this case is not inherent. It arises only when there is a written agreement of the parties which either has been incorporated in the judgment and approved in that manner or "otherwise approved by the court." Here, there was no such agreement. The court had no authority under section 510(b) to order unallocated maintenance beyond petitioner's death.

It seems axiomatic that if the court has no authority to order maintenance that would extend beyond the death of the party obligated to pay the maintenance, the court has no authority to require security for the payment of maintenance after the death of the obligor. Moreover, it is questionable if the court has authority under the Act even to order security for maintenance accruing prior to death of the obligor. Prior to the Act, section 18 of "An Act to revise the law in relation to divorce" was in force and provided:

> "In any order entered pursuant to this Section, the court may order the defendant to give reasonable security for such alimony and maintenance or such money or property settlement

\*\*\* where a party willfully refuses to comply with the court's order to pay alimony and maintenance or to perform such money or property settlement, or has shown himself unworthy of trust." (Ill. Rev. Stat. 1975, ch. 40, par. 19.)

No such provision is contained in the present Act. The failure to include a provision for securing maintenance in the present Act, when repealed legislation contained such a provision, evinces an intent to withdraw the authority from the court to require such security. *Goedde v. Community Unit School District No. 7* (1959), 21 Ill. App. 2d 79, 157 N.E.2d 266.

■ Respondent contends that by reserving for court decision the question of security for maintenance, the parties agreed to maintenance within the meaning of section 510(b). We cannot accept that construction. The reservation of the question for court determination is the antithesis of an agreement. Our action in construing the court's authority in regard to maintenance more narrowly than its authority in regard to alimony under prior law is consistent with the lesser emphasis placed on maintenance under the Act. See Ill. Ann. Stat., ch. 40, par. 504, Historical and Practice Notes, at 524 (Smith-Hurd 1980).

In contrast to the lack of any indication in the Act that the court has authority to provide for maintenance after the death of the obligor or security for maintenance at any time, there is ample provision in that respect in regard to child support. Section 510(c) states:

"(c) Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein, *but not by the death of a parent obligated to support the child.* When a parent obligated to pay support dies, the amount of support may be modified, revoked or commuted to a lump sum payment, to the extent just and appropriate in the circumstances, and such determination may be provided for at the time of the dissolution of the marriage or thereafter." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 40, par. 510(c).)

Section 503(g) gives further authority to the court to provide for continuation of child support. It states:

"The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." (Ill. Rev. Stat. 1983, ch. 40, par. 503(g).)

Section 503 is designated "Disposition of property" and deals with

that subject.

In the case of *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988, the court held that section 510(c) of the Act and the then section 503(d) (Ill. Rev. Stat. 1979, ch. 40, par. 503(d), now Ill. Rev. Stat. 1983, ch. 40, par. 503(g)) authorized the court to require a spouse who was ordered to provide child support to secure the continuation of such support by maintaining certain life insurance policies and naming the child as irrevocable beneficiary of such policies.

Respondent maintains that even if there is no authority under section 510(b) to require petitioner to furnish security and even though maintenance is not dealt with in section 503(g), the general powers granted the court by section 503 to divide property authorize the court to order the security. She points out that nonvested pension plans having no present cash value have been held to be property within the meaning of section 503. (*In re Marriage of Campise* (1983), 115 Ill. App. 3d 610, 450 N.E.2d 1333; *In re Marriage of Hobbs* (1982), 110 Ill. App. 3d 451, 442 N.E.2d 629.) She then asserts that (1) even the term life insurance policy on petitioner's life which has no present cash value should also be considered property within the meaning of section 503, and (2) an order by the court requiring that she be made beneficiary of such policy would be authorized by section 503.

Respondent contends that, as an alternative to requiring that she be the beneficiary of the one or more various instruments available for security, the court should order that a trustee be the beneficiary with directions to use the proceeds for her maintenance. She draws analogy to the provision of section 503(g) to secure child support and to the order in *Dulyn*. She would agree that any proceeds remaining upon her death, remarriage or other disqualification for maintenance could be disposed of according to petitioner's prior direction.

We do not agree with respondent's theory that section 503 would authorize the entry of the order she requests. Section 503(g) provides for an order in aid of payment of child support. Had the legislature intended a provision for a disposition of property in aid of an order for maintenance, it would have so provided. The drafters of the Act contemplated that division of property would reduce the requirement for maintenance. (See Ill. Ann. Stat., ch. 40, par. 504, Historical and Practice Notes, at 524 (Smith-Hurd 1980).) It seems highly unlikely that the legislature would have intended section 503 to be used as a vehicle to indirectly provide for security for maintenance after the death of the obligor when such maintenance could not directly be or-

dered pursuant to section 510(b).

■ We recognize that the unallocated maintenance included some child support. The parties have secured the child support obligation by the naming of the children as beneficiaries of a $100,000 life insurance policy. The child support obligation extends beyond the life of the obligor. (Ill. Rev. Stat. 1983, ch. 40, par. 510(c).) We have concluded that the obligation for maintenance does not so extend absent an agreement. Because no such agreement existed here, the trial court had no authority to order security for that nonexistent obligation.

Accordingly, we affirm.

Affirmed.

TRAPP and WEBBER, JJ., concur.