# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Marriage of Brankin*, 2012 IL App (2d) 110203

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF KAREN M. BRANKIN, Petitioner-Appellee and Cross-Appellant, and GARY W. BRANKIN, Respondent-Appellant and Cross-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-0203 |
| Filed | March 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's award of permanent maintenance in the amount of $3,000 per month was affirmed based on petitioner's current needs, respondent's current income and his impending reduced employment income, but the summary denial of petitioner's request that the maintenance award be secured by a life insurance policy was vacated and the cause was remanded to allow the trial court to exercise its discretion in determining whether respondent should purchase life insurance to secure his obligation and what terms should be included in such an order. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 07-D-984; the Hon. Joseph J. Bruce, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on
Appeal

Robert C. Pottinger and Jody L. Beilke, both of Barrick, Switzer, Long, Balsley & Van Evera, LLP, of Rockford, for appellant.

Peter A. Savitski, of Rockford, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Burke and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    The respondent, Gary Brankin, appeals from the order of the circuit court of Winnebago County awarding the petitioner, Karen Brankin, $3,000 a month in permanent maintenance. On appeal, Gary argues that the trial court's maintenance award was improper. Karen has filed a cross-appeal, arguing that the trial court's maintenance award was insufficient. She also argues that the trial court erred in denying her request that the maintenance award be secured by a life insurance policy. For the following reasons, we affirm in part, vacate in part, and remand for additional proceedings.

¶ 2                          I. General Background

¶ 3    The parties were married on September 12, 1981. They had one child together, Allison, who was born in 1984 and is now emancipated. In 2010, Gary was a 58-year-old endodontist earning approximately $400,000 a year. Karen was a 55-year-old tenured school teacher for the Rockford school system, earning approximately $75,000.

¶ 4    Karen filed a petition for dissolution of marriage on August 10, 2007. On September 27, 2010, the parties entered into a marital settlement agreement (MSA) resolving all issues except maintenance and life insurance. The MSA provided that Karen was to receive assets with a value of between $605,340 and $800,100. This included $55,000 in cash, her Teachers Retirement System account (valued at between $330,840 and $526,900), $137,000 in a 403(b) account, $15,000 in an individual retirement account (IRA), and $67,500 from Gary's 401(k) account. Gary received assets that were valued at between $574,000 and $1.8 million. The discrepancy in that amount was based on the value of Gary's medical practice. Karen placed the value of the medical practice at $960,000, while Gary placed the value of the medical practice at $57,445. Gary also received the marital residence, which had a negative equity of between $234,000 and $334,000.

¶ 5    Beginning September 27, 2010, the trial court conducted a three-day hearing on the issue of maintenance and life insurance. At the close of the hearing, the trial court awarded Karen $3,000 per month in permanent maintenance. The trial court's decision indicates that it particularly considered (1) the parties' standard of living during the marriage; (2) Karen's

need for maintenance; (3) Gary's current ability to pay maintenance; and (4) Gary's ability to pay maintenance in the future, based on his age and health in light of his recent heart attack. The trial court denied Karen's request that Gary be required to secure the maintenance award with a $1 million life insurance policy. The trial court explained that, based on this court's decision in *In re Marriage of Feldman*, 199 Ill. App. 3d 1002 (1990), it could not order Gary to purchase such life insurance. Following the trial court's ruling, Gary filed a timely notice of appeal and Karen filed a timely notice of cross-appeal.

¶ 6                                                    II. Discussion

¶ 7                                                  A. Maintenance

¶ 8         Gary's first contention on appeal is that the trial court erred in awarding Karen $3,000 per month in permanent maintenance. Gary contends that, based on the relevant statutory factors in setting maintenance, Karen should not have been awarded any maintenance. Karen's first contention on her cross-appeal is that the trial court's award of maintenance was insufficient. She insists that she should have received a monthly award of $7,000.

¶ 9         Maintenance is designed to be rehabilitative and to allow a dependent spouse to become financially independent. *In re Marriage of Haas*, 215 Ill. App. 3d 959, 964 (1991). "Permanent maintenance, on the other hand, is appropriate where it is evident that the recipient spouse is either unemployable or employable only at an income that is substantially lower than the previous standard of living." *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 303 (2005). Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (750 ILCS 5/504(a) (West 2010)) provides that a court is to award maintenance in an amount and of a duration as it deems just, after consideration of the following factors: the income and property of each party; the needs of each party; the present and future earning capacity of each party; any impairment of present and future earning capacity of the recipient spouse due to devoting time to domestic duties or forgoing opportunities because of the marriage; the time necessary to enable the party seeking maintenance to acquire appropriate education, training and employment; the standard of living established during the marriage; the duration of the marriage; the age and physical and emotional condition of both parties; the tax consequences of the property division; any contribution and services by the recipient spouse to the other spouse; any valid agreement of the parties; and any other factor that the trial court expressly finds to be just and equitable. 750 ILCS 5/504(a) (West 2010); *In re Marriage of Stam*, 260 Ill. App. 3d 754, 756 (1994).

¶ 10        "[I]n awarding maintenance, courts have wide latitude in considering what factors should be used in determining reasonable needs, and the trial court is not limited to the factors listed in the governing statute." *In re Marriage of Mohr*, 260 Ill. App. 3d 98, 106 (1994). "No one factor is determinative of the issue concerning the propriety of the maintenance award once it has been determined that an award is appropriate." *Murphy*, 359 Ill. App. 3d at 304. "When determining the amount and duration of maintenance, the trial court must balance the ability of the spouse to support himself [or herself] in some approximation to the standard of living he [or she] enjoyed during the marriage." *In re Marriage of Shinn*, 313 Ill. App. 3d 317, 322 (2000). A trial court's determination as to an award of maintenance will not be disturbed on

appeal absent an abuse of discretion. *In re Marriage of Dunlap*, 294 Ill. App. 3d 768, 772 (1998).

¶ 11        During the last years of the marriage, the parties had a combined annual income of approximately $500,000 and they had assets that, based on some valuations, were worth more than $2.5 million. This enabled the parties to enjoy a high standard of living. They lived in a home that originally cost $1.3 million. Both parties were able to enjoy traveling on Gary's airplane.

¶ 12        The record is clear that Karen would not be able to maintain the standard of living she was accustomed to without some assistance from Gary. Expenses for Karen's reasonable monthly needs, as found by the trial court, were between $6,608 and $7,108, which exceeded her monthly income of $6,333. Further, as Gary's monthly income, based on his salary alone, was $30,667, he was able to pay maintenance without greatly affecting his own standard of living. Gary argues that the parties' standard of living during the marriage should be given minimal weight because the parties were living beyond their means during the marriage. The primary example Gary cites is the $1.3 million home that the parties bought and for which he is still personally obligated to pay over $800,000. Gary's argument is unpersuasive. Although the parties might have been living beyond their means during the marriage, we believe it would be inequitable to saddle Karen alone with a reduced standard of living, especially since Gary earns over $30,000 a month and continues to live in the expensive home that, he now complains, the parties should never have purchased.

¶ 13        We also reject Gary's argument that Karen should not have been awarded maintenance because she has a job that pays a good salary of $75,000 and had already been awarded marital assets that were worth over $600,000. Gary contends that maintenance should be awarded only if the dependent spouse needs assistance to become financially independent. See *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 652 (2008). Based on Karen's income and assets, Gary argues that maintenance was inappropriate because she was already financially independent.

¶ 14        We do not disagree with the principle that Gary cites from *Heroy*. However, whether one is able to meet her reasonable needs and become financially independent is still set in the context of what the standard of living was during the marriage. See *In re Marriage of Culp*, 341 Ill. App. 3d 390, 398 (2003) (reasonable needs must be viewed in light of the standard of living established during the marriage); *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 972 (1992) ("[t]he benchmark for determination of maintenance is the reasonable needs of the spouse seeking maintenance in view of the standard of living established during the marriage"). Here, the assets that Karen received in the MSA were generally not income-producing. Other than the $55,000 in cash, which could produce some interest income, the assets she was awarded could not help her offset the expenses for her monthly needs. *Cf. In re Marriage of Bratcher*, 383 Ill. App. 3d 388 (2008) (trial court's decision to award maintenance to wife was improper in light of $1.6 million in assets that were awarded to wife, many of which were income-producing). Further, Karen's salary, although significant at $75,000, was not high enough by itself to allow her to maintain the same standard of living she enjoyed during the marriage as part of a household that had a $500,000 annual income. Thus, we agree with the trial court that Karen could not meet her reasonable needs, in view

of the standard of living established during the marriage, without some assistance from Gary.

¶ 15     Gary further contends that Karen's maintenance award was excessive because the needs she listed in her financial affidavit and testified to were exaggerated. In her financial affidavit, Karen listed $7,434 in monthly expenses. Of that amount, Gary complains of $5,223. Specifically, Gary complains that the following expenses were excessive: (1) $705 payable to her mother for a mortgage payment; (2) $128 in healthcare and hospital premiums for Gary; (3) $350 for cell phones for four people; (4) $250 for repairs to her condominium; (5) $825 for food; (6) $170 for computer supplies; (7) $560 for clothing; (8) $250 for gas; (9) $225 for gifts; (10) $650 for charity donations; (11) $530 for vacations; and (12) $580 in cash.

¶ 16     In its judgment setting maintenance, the trial court specifically considered whether the expenses listed in Karen's affidavit were excessive. The trial court stated:

"Karen testified that her financial affidavit is an accurate reflection of her needs. I agree that the figures listed on her affidavit on the whole represent her actual average expenditures over the past three years. However, in evaluating her needs in light of the standard of living during the marriage, I find that some listed items are inflated. I will give some examples. Karen lists $650 per month ($7,800 annually) as her contribution to charity, primarily to Heartland Church. Yet, a review of Plaintiff's Ex. 2A, the parties' joint tax return for 2007, the year the dissolution petition was filed, shows a combined total charitable contribution of $6,675, with only $2,810 allocated to Heartland Church, out of a total $476,041 of combined taxable income. Karen's current charitable contributions exceed the pattern of giving during the marriage. She also lists $128 per month for health insurance for Gary, which terminates upon the entry of the Judgment for Dissolution. In addition, items such as $200 per month for furniture repair and replacement and $250 per month for condominium repairs are unreasonably high and do not represent Karen's actual needs at this time. Her listing of $170 for continuing education includes some reimbursable expenses. Her listing of $175 per month for office and computer supplies includes the purchase of items that do not have to be repurchased annually, or every three years. I conclude that her budget in some respects is inflated and not commensurate with her actual needs in light of the standard of living during the marriage.

The issue of Karen's expenditures for vacations has been raised in argument. I note that Karen lists $530 per month for vacations because she wishes to approximate the trips she took with Gary when he traveled on business related conferences. Although Gary has been able to enjoy many vacations, his ability to take many of those vacations is because he traveled to business related conferences and he was able to combine business with pleasure. [*In re Marriage of*] *Murphy*, 359 Ill. App. 3d 289 (3d Dist. 2005) calls into question the court's ability to use these business related vacations as part of Karen's standard of living. On the other hand, Gary himself lists $450 per month as his personal vacation related expenditures, which presumably does not include the business portions of his trips. On balance, I consider Karen's budgetary expenditure for vacations to be somewhat inflated. I find this particular item should be rated at $450, the same as rated by Gary.

* * *

I am aware that Karen's budget is not fully reflective of the diminishment of her lifestyle from the lifestyle of the marriage. For example, during the marriage, Karen enjoyed living in a much larger home and enjoyed the ability to travel on a private aircraft. In both of these respects, Gary has maintained that previous lifestyle. Karen also testified that during the separation and even while receiving temporary maintenance, she had to borrow money from her mother to pay her condominium expenses. However, her condominium payments are listed as part of her monthly budget and I consider them as part of Karen's monthly expenses.

In summary, Karen's total budget lists monthly expenditures of $7,434, plus debt payments of $608. In my view, a budget more reflective of her actual needs in light of the standard of living during the marriage is in the area of $6,000 to $6,500 per month, plus $608 for debt payments."

¶ 17     Based on the trial court's comments, it is apparent that it agreed with Gary's assertion that many of the expenses that Karen listed in her financial affidavit were inflated. The trial court took that into consideration when it lowered Karen's monthly expenses to what it believed they really were. Nonetheless, it is also apparent that the trial court found that Karen's standard of living would be reduced in comparison to what it was during the marriage if it set maintenance only at a level that met her current needs. As set forth above, it was appropriate for the trial court to consider not only Karen's current needs but also how much maintenance was necessary to allow her to enjoy a standard of living comparable to that she enjoyed during the marriage. *Culp*, 341 Ill. App. 3d at 398.

¶ 18     We next consider Gary's contention that maintenance was inappropriate in light of his age and declining health. Gary testified that he was nearing 60, the age at which most endodondists retire. He also testified that his recent heart attack resulted in his working less, and hence earning less. Alternatively, Gary argues that, even if the maintenance award was appropriate, in light of his age and health the trial court should not have made the maintenance award permanent.

¶ 19     We note that in entering its judgment the trial court specifically addressed Gary's age and health. The trial court found that Gary's heart attack had caused him to change his work schedule. The trial court further found that Gary's work was "physical in nature and his health may affect his ability to work in the future." The trial court's decision demonstrates that it placed significant weight on Gary's health and age in determining maintenance. As noted above, there was a substantial disparity between Gary's and Karen's monthly incomes. Gary earned over $30,000 a month while Karen earned $6,333. Such a disparity, by itself, suggested that the maintenance award to Karen should have been higher. See *Dunlap*, 294 Ill. App. 3d at 774 (determining that equalizing parties' incomes in setting maintenance would help approximate the standard of living during the marriage). However, as Gary's testimony indicated that his income would likely soon be falling due to his age and health, we cannot say that the trial court abused its discretion in setting the maintenance award at a lower rate.

¶ 20     In so determining, we reject Gary's argument that the trial court erred in making the

maintenance award permanent. Here, permanent maintenance was appropriate because Karen was not employable at an income that would enable her to maintain her previous standard of living. See *Murphy*, 359 Ill. App. 3d at 303. Further, due to Gary's substantial assets, many of which were income-producing, he would still be able to pay maintenance after retirement without significantly affecting his own standard of living. It is apparent that, in setting the maintenance award, the trial court considered (1) Karen's need for permanent maintenance; (2) Gary's substantial assets; and (3) Gary's health and how much longer he would likely continue to work. Based on its consideration of these factors, we do not believe that the trial court abused its discretion in determining that the award of maintenance should be permanent.

¶ 21    In so ruling, we find Gary's reliance on *Bratcher*, *Murphy*, and *In re Marriage of Haas*, 215 Ill. App. 3d 959 (1991), to be misplaced. In *Bratcher*, the reviewing court found that monthly maintenance of $12,500 for 111 months was inappropriate because the wife had been awarded substantial assets ($1.6 million, the same as her husband). *Bratcher*, 383 Ill. App. 3d at 388. These assets provided her a monthly income of approximately $14,000. Further, the monthly maintenance award was improper because it made the wife's monthly income ($26,500) substantially higher than the husband's ($14,500). *Id.* at 389. Here, the assets that Karen was awarded were generally not income-producing. Also, the maintenance award did not create a situation where her monthly income was higher than Gary's.

¶ 22    In *Murphy*, following a 10-year-marriage, the wife was awarded $826,000 in marital and nonmarital assets, some of which were income-producing. She was also awarded $15,000 a month in maintenance for four years. On appeal, the wife argued that she should have received monthly maintenance of $46,000 and for a longer period of time in order to maintain the standard of living that she enjoyed during the marriage. The reviewing court rejected her argument, finding that her expenses were inflated because she sought to enjoy the same perks (flying on jets, traveling on yachts) that she did when she was traveling with her husband on business. *Murphy*, 359 Ill. App. 3d at 304. The reviewing court explained that there was no requirement that the parties are to permanently maintain the same standard of living. *Id.* at 306. Here, Karen and Gary were married substantially longer than the parties in *Murphy*, and, compared to the wife in *Murphy*, Karen was awarded relatively few income-producing assets and was awarded maintenance at a substantially lower rate, although for a longer period of time. Moreover, despite Gary's insistence to the contrary, based upon his ability to pay, the trial court did not abuse its discretion in ordering that he pay maintenance in order to help Karen approximate the standard of living that she enjoyed during the marriage. *Culp*, 341 Ill. App. 3d at 398.

¶ 23    In *Haas*, the wife received $80,468 in marital assets and the husband received $72,964 in marital assets. The wife's annual gross income was approximately $14,524 while the husband's was $49,000. The trial court awarded the wife maintenance of $600 per month, to be reviewed in 18 months. On appeal, the wife argued that her maintenance award should have been higher and for a longer duration. The reviewing court found that permanent maintenance was not justified, because the wife had been employed throughout the marriage and seemingly had the potential to become self-sufficient. *Haas*, 215 Ill. App. 3d at 964. Further, the reviewing court found that $600 a month in maintenance was sufficient to allow

the wife to maintain her standard of living. *Id.* at 964-65. Here, in contrast, as set forth above, Karen did not have the ability to meet her reasonable needs, based on the standard of living established during the marriage, without some assistance from Gary.

¶ 24    In determining that the trial court did not abuse its discretion in setting the monthly maintenance award at $3,000, we also reject Karen's argument that the trial court should have awarded her $7,000. Karen argues that the trial court's award was improper because it was not based on all of Gary's income. Karen further contends that the trial court's award was insufficient because it left a wide disparity between her monthly income and Gary's monthly income.

¶ 25    In its judgment, the trial court noted that Gary argued that his current annual income was $300,000. The trial court found that his salary was actually $368,004. The trial court also found that Gary had annual rental income of over $30,000, received the benefits of contributions from his employer to a pension plan, and also benefitted from his employer paying some of his personal expenses (clothing, a health club membership) as part of its business expenses. After considering the various factors relevant in awarding maintenance, the trial court found that an award of $3,000 per month was "well within Gary's ability to pay, even assuming his employment income is $300,000 annually, as he argued."

¶ 26    As Karen points out, a trial court's failure to base its maintenance determination on all property is an abuse of discretion. *Feldman*, 199 Ill. App. 3d at 1006-07. Karen insists that the trial court's decision was improper because it was based on Gary's annual income being $300,000, when clearly it was much higher. Karen's argument misconstrues the trial court's comments. In setting maintenance, the trial court may properly consider the payor spouse's ability to pay. *In re Marriage of Lichtenauer*, 408 Ill. App. 3d 1075, 1089 (2011). That is what the trial court did when it determined that Gary's minimum income was $300,000, an amount that allowed him to pay maintenance. As the trial court did not purport to make its maintenance award a percentage of Gary's income, the trial court did not abuse its discretion in basing Gary's ability to pay maintenance on a level of income lower than his actual income.

¶ 27    We also reject Karen's argument that the trial court erred in not more equally apportioning the parties' incomes so that she could enjoy a standard of living comparable to what she enjoyed during the marriage. In making this argument, Karen relies on *Dunlap*. In that case, the reviewing court equalized the parties' incomes to approximate their reasonable needs in view of the marital standard of living. *Dunlap*, 294 Ill. App. 3d at 774. Karen argues that, if she were awarded maintenance of $7,000, Gary's monthly income would drop only to $23,000, a level still high enough for him to meet all of his needs.

¶ 28    There is no requirement under either the Dissolution Act or Illinois case law that requires the equalization of incomes. *In re Marriage of Reynard*, 344 Ill. App. 3d 785, 791 (2003). There is also no such prohibition. *Id*. Thus, whether a trial court should equalize the parties' incomes (or more equally apportion them, as Karen argues in this case) is a matter for the trial court's discretion. For the reasons set forth above, we do not believe that the trial court abused its discretion in setting the maintenance award at $3,000. In arguing that their incomes should have been more equally apportioned, Karen minimizes Gary's health

concerns as well as the likelihood that his employment income would be dropping due to his age. Thus, although Gary's current income indicated that he could pay Karen more in maintenance, there was not the same certainty with regard to Gary's future income. As we believe that the trial court properly considered Gary's current income, Karen's needs, and the impact of Gary's impending reduced employment income, we do not believe that the trial court abused its discretion in not setting the maintenance award at a higher level.

¶ 29                                         B. Life Insurance

¶ 30      Karen's second contention on appeal is that the trial court erred in denying her request that her maintenance award be secured by a life insurance policy. Karen acknowledges that the trial court relied on this court's decision in *Feldman* in determining that it could not award her the relief she requested. However, Karen argues that *Feldman* should no longer be viewed as precedential in light of recent case law as well as a shift in public policy that favors maintenance awards being secured by life insurance.

¶ 31      In *Feldman*, we rejected the wife's argument that the trial court erred in not ordering her maintenance award to be secured by the husband's life insurance. *Feldman*, 199 Ill. App. 3d at 1007. We explained that we agreed with the reasoning of the Appellate Court, Fourth District, in *In re Marriage of Clarke*, 125 Ill. App. 3d 432 (1984). The *Clarke* court held that, absent the parties' agreement, the court had no authority to order security for the husband's payment of the wife's unallocated maintenance after his death. *Id.* at 436. The *Clarke* court explained that post-death life insurance benefits received in lieu of maintenance would violate the Dissolution Act because maintenance obligations terminate upon death. *Id.* The *Clarke* court further expounded that, because a prior version of the Dissolution Act gave the trial court discretion in having an award of maintenance supported by reasonable security and the current version did not, there was evidence of a legislative intent to withdraw authority from the court to require such security. *Id.* at 437.

¶ 32      The Fourth District subsequently abandoned its decision in *Clarke* in *In re Marriage of Walker*, 386 Ill. App. 3d 1034, 1049 (2008). The *Walker* court found that, although the Dissolution Act prohibits maintenance payments after a payor's death, the Dissolution Act does not prohibit payments during a payor's life that have an effect after the payor's death. *Id.* at 1045. In support of this finding, the *Walker* court gave the example that trial courts are encouraged to award large amounts of property in lieu of maintenance. Property, like insurance, is available to the payee after the payor's death. *Id.* The *Walker* court also rejected the *Clarke* court's finding that a change in the statutory language evidenced an intent by the legislature to prohibit a trial court from using its discretion to have a maintenance award secured by life insurance. The *Walker* court explained that the current statute was not simply a revision of Illinois law but an adoption of a standardized, uniform act. *Id.* (citing *In re Marriage of Vernon*, 253 Ill. App. 3d 783, 789 (1993)). "Consequently, such an omission should not be construed as evincing a legislative intent to change the law and withdraw the court's authority to order security for maintenance." *Id.* at 1045-46 (citing *Vernon*, 253 Ill. App. 3d at 789).

¶ 33      We also note that, effective January 1, 2012, the Illinois General Assembly modified the

Dissolution Act to specifically allow the trial court discretion in ordering a maintenance award to be secured by life insurance. Section 504(b-7)(f) of the Dissolution Act now provides:

> "An award ordered by a court upon entry of a dissolution judgment or upon entry of an award of maintenance following a reservation of maintenance in a dissolution judgment may be reasonably secured, in whole or in part, by life insurance on the payor's life on terms as to which the parties agree, or if they do not agree, on such terms determined by the court ***." Pub. Act 97-608, § 5 (eff. Jan. 1, 2012).

¶ 34 Although the trial court was bound to follow this court's decision in *Feldman*, we are not. In considering the *Feldman*, *Clarke*, and *Walker* courts' rationales for their decisions, we find the *Walker* court's decision to be the best reasoned. The Dissolution Act gives the court wide discretion in awarding maintenance and dividing marital property in "just proportions." 750 ILCS 5/503(d) (West 2010). As the Dissolution Act is to be liberally construed (750 ILCS 5/102(5) (West 2010)), we believe that the trial court having discretion to award a form of security, such as life insurance, for a maintenance obligation is consistent with the purposes of the Dissolution Act. Further, we believe that the General Assembly's recent amendment to the Dissolution Act does not change a court's ability to order that a maintenance award be secured by a life insurance policy; rather, the General Assembly's amendment clarifies that the court does have that power. We therefore depart from this court's decision in *Feldman*. Accordingly, since the trial court did not consider the merits of Karen's argument that her maintenance award be secured by a life insurance policy, we vacate that part of the trial court's decision and remand with directions that it exercise its discretion in determining whether Gary should purchase life insurance to secure his maintenance obligations to Karen and, if so, in what amount and under what terms it should be ordered. See Pub. Act 97-608, § 5 (eff. Jan. 1, 2012).

¶ 35                                     III. Conclusion

¶ 36 For the foregoing reasons, we affirm the trial court's award of $3,000 a month in permanent maintenance to Karen. We vacate the trial court's decision as to the issue of life insurance, and we remand for additional proceedings consistent with this opinion.

¶ 37 Affirmed in part and vacated in part; cause remanded with directions.