2021 IL App (1st) 192491-U

No. 1-19-2491

Order filed March 31, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | |
|---|---|
| *In re* Marriage of | ) Appeal from the |
| | ) Circuit Court of |
| BRYCE O. WALKER, | ) Cook County |
| | ) |
|     Petitioner-Appellant, | ) |
| | ) No. 17 D 630250 |
| and | ) |
| | ) |
| KRISSANDRA D. TAYLOR-WALKER, | ) Honorable |
| | ) John T. Carr, |
|     Respondent-Appellee. | ) Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

## ORDER

¶ 1    *Held*: We affirm the circuit court's judgment for dissolution of marriage of the parties where the court did not improperly treat certain employee-stock benefits of the husband as income for calculating his wife's maintenance award and where the record is too deficient to determine if the court erred in calculating the husband's child support payment.

¶ 2     The circuit court entered a judgment for dissolution of marriage of Bryce O. Walker and Krissandra D. Taylor-Walker that provided a maintenance award for Krissandra and obligated Bryce to pay child support. The court included as income to Bryce for purposes of calculating the maintenance award certain restricted stock and preferred stock from his employment that he would cash. After Bryce filed an unsuccessful motion to reconsider the judgment, he appealed contending that the court erred by treating the restricted stock and preferred stock as income for purposes of calculating Krissandra's maintenance award and also erred in calculating his child support obligation by failing to deduct from his income the maintenance award to Krissandra. For the reasons that follow, we affirm.

¶ 3                               I. BACKGROUND

¶ 4     In March 2017, Bryce, an engineer with Verizon Wireless, filed a petition for dissolution of marriage from his wife, Krissandra, an assistant principal. In the petition, Bryce stated that he and Krissandra had two children together, a son who was born in 2000 and a daughter who was born in 2003. Bryce asserted that, because Krissandra was employed, she was capable of supporting herself without his assistance. In Krissandra's answer to the petition, however, she denied that she was capable of supporting herself without Bryce's assistance and requested maintenance from him.

¶ 5     In November 2018, Krissandra filed a motion requesting child support from Bryce. In the motion, Krissandra stated that their daughter lived with her and she could not adequately care for her daughter without support from Bryce. The circuit court granted the motion and ordered Bryce to temporarily pay $1645 of child support per month based on his net income of $20,964 per month. Later that month, Krissandra filed a petition for maintenance from Bryce. In the petition Krissandra asserted that, during her marriage to Bryce, she had the primary responsibility of caring

for the family household while Bryce had the greater economic responsibilities. Krissandra further stated that she enjoyed a certain lifestyle during the marriage, with Bryce providing for much of her needs.

¶ 6    In January 2019, the circuit court held a hearing on Krissandra's petition for maintenance and thereafter entered a written order, wherein it noted that the statutory guidelines calculation of maintenance to Krissandra was $3,901 per month and the statutory guidelines calculation of child support from Bryce was $1316 per month. According to the court, the parties had reached an agreement resolving the issue of maintenance, and it ordered Bryce to pay Krissandra $48,000 in maintenance per year in a lump sum, with the first payment beginning on January 29, 2019 and the next payment being due on January 1, 2020. The court noted that the order was subject to modification based on a substantial change in the circumstances. The court further stated that Bryce did not waive his right to argue a maintenance amount below the statutory guidelines at trial. Lastly, the court ordered that Bryce pay $1316 per month in child support to Krissandra for their daughter pursuant to a uniform order of support. In the referenced order of support, the court stated that Bryce's net income was $16,141 per month after including "taxes and maintenance."

¶ 7    The case had been set for a trial to begin in March 2019, and as the trial date neared, the parties submitted their witness disclosure lists. However, prior to the trial date, the parties reached a marital settlement agreement which was to be incorporated into the ultimate judgment for dissolution of marriage. But, according to a motion later filed by Krissandra, the parties subsequently had disagreements about certain binding pre-trial rulings from the circuit court. As a result, the court continued the case several different times during the spring of 2019 as the parties apparently attempted to resolve those differences. The parties eventually submitted a revised marital settlement agreement to the court, but Bryce put forth written objections to several portions

of the purported agreement. One such objection was to certain restricted stock units (RSUs) and preferred stock units (PSUs), which had been awarded to him by his employer, being treated as income for purposes of calculating Krissandra's maintenance award. The court ruled on Bryce's objection by writing "no" on his written filing.

¶ 8    In July 2019, Krissandra filed a motion for an entry of judgment for dissolution of marriage *instanter*. According to her motion, the prior month, Krissandra's attorney had sent Bryce's attorney the proposed judgment for dissolution of marriage that incorporated the circuit court's rulings on Bryce's objections. Both parties' attorneys engaged in some back and forth regarding the proposed judgment, including Bryce's attorney requesting revisions to the proposed judgment. Krissandra claimed that her attorney incorporated those revisions and sent a revised proposed judgment to Bryce's attorney, but never heard back. In light of this history and the silence from Bryce's attorney, Krissandra requested the circuit court enter the proposed judgment that was e-mailed to Bryce's attorney.

¶ 9    The next month, the circuit court granted Krissandra's motion and entered the judgment for dissolution of marriage. In relevant part, the court stated that the award of maintenance contained therein was in accordance with the relevant factors of section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS 5/504(a) (West Supp. 2019). The court ordered Bryce to pay Krissandra a yearly lump sum maintenance payment to be calculated in accordance with the statutory maintenance guidelines (750 ILCS 5/504(b-1)(1)(A) (West Supp. 2019)) with that obligation having commenced in January 2019 and continuing for 8 years and 10 months.[1] The court ordered the parties to exchange salary documentation each year so that Bryce's

---

[1] According to the statutory guidelines, because Bryce and Krissandra's gross income was below $500,000, Krissandra's maintenance award was to be "calculated by taking 33 1/3% of [Bryce's] net annual income minus 25% of [her] net annual income." 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2019).

attorney could calculate the maintenance amount. The court added that: "Any Grant Date Award, relative to Bryce's Verizon Restricted Stock Units and Preferred Stock Units dated after January 1, 2018, and subsequently cashed shall be treated as income and therefore shall be included in his gross income for the purposes of calculating maintenance." The court also stated that the lump sum maintenance payments "shall not" be included as income to Krissandra or deductible by Bryce for federal and state income tax purposes. Later in the judgment, the court ordered that Bryce would retain many items as his sole and separate property, including his "Verizon Restricted Stock Units and Preferred Stock Units, except that Krissandra, shall be entitled to 50% of the net amount received by Bryce, which have a Grant Date Award prior to January 1, 2018, but which have not been cashed out by Bryce as of the entry of the Judgment for Dissolution of Marriage."

¶ 10    Additionally, in the judgment's section related to child support, the circuit court stated that the statutory guidelines amount of child support was $1242 per month and ordered that amount paid from Bryce to Krissandra for the benefit of their daughter. This amount was based on Bryce's "gross income from regular pay, vacation pay, holiday pay, personal leave pay and 2018 short-term incentive pay for a total of $250,047.17 per year; and Krissandra's 2018 gross income of $108,000 per year." The calculation did "not include income received by Bryce from Preferred Stock Units or Restricted Stock Units award," as the court believed including these in the calculation of child support "would result in a windfall to Krissandra." The court referenced the "child support calculation worksheet," which was "attached as Exhibit A," but this exhibit was not included in the record on appeal. The judgment made further reference to multiple other exhibits, including a "Verizon 2015-2017 Long Term Incentive Award Statement" that purportedly detailed

_____

However, that amount, "when added to the net income of [Krissandra]" could "not result in [her] receiving an amount that is in excess of 40% of the combined net income of the parties." *Id.*

various RSUs and PSUs granted to Bryce. None of these other exhibits were included in the record on appeal. The court separately entered an agreed allocation judgment that provided for a parenting plan and allocated parental responsibilities.

¶ 11    In September 2019, Bryce filed a motion to reconsider and modify the judgment for dissolution of marriage. In the motion, Bryce noted that, although the parties reached an agreement on some issues related to the dissolution of his marriage from Krissandra, they "did not reach an agreement on the issues of, among other things, the calculation and payment of maintenance and child support." Bryce added that, "[a]fter multiple court appearances regarding certain terms and provisions to be provided in the final order, the Court entered said Judgment over Bryce's objections," both written and oral. Thereafter, Bryce stated that, through his employment, he earned a base salary, bonus incentives and additional income from the exercise of PSUs and RSUs that had previously been awarded to him. To that end, Bryce asserted that, in 2018, he earned a base salary of $190,339 and received a one-time bonus of $59,708. Regarding the PSUs and RSUs, Bryce noted that, while he was awarded these annually, he could not exercise them until they vested two years later. And once he exercised them, they were paid out the following year. Bryce further stated that, after he filed for dissolution of marriage in 2017, he exercised PSUs and RSUs awarded to him in 2015 and received payment of them in 2018, which he noted was exhibited in a long-term incentive award statement that he submitted "[d]uring the trial of these proceedings." Bryce accordingly observed that his final paycheck from 2018 reflected the 2015 PSUs and RSUs, which he also noted had been submitted "during the trial of these proceedings."

¶ 12    Bryce subsequently highlighted that he had objected to his PSUs and RSUs being included as income for purposes of calculating Krissandra's maintenance award, which, if the court granted, would have acted as a potential cap on the amount of maintenance Krissandra could receive. In

not excluding the PSUs and RSUs from his income, Bryce argued that the court erred in applying the maintenance statute of the Act (750 ILCS 5/504 (West Supp. 2019)) because Krissandra could end up with a windfall without a court-imposed cap on the amount of her maintenance. Additionally, Bryce argued that the court erred in calculating his child support obligation because it did not deduct the $48,000 lump sum maintenance payment that he already made to Krissandra earlier in the year, which allegedly violated the child support statute of the Act (750 ILCS 5/505 (West Supp. 2019)).

¶ 13    After Krissandra filed a response, the circuit court held a hearing on Bryce's motion. In a written order following the hearing, the court found that a cap on the maintenance award "would be inappropriate" and including the PSUs and RSUs as income in the annual calculation of Krissandra's maintenance award "would not result in a windfall" to her. The court also found that the child support award of $1242 outlined in the judgment for dissolution of marriage "superseded the temporary order of support" entered by the court from January 2019. The court accordingly denied Bryce's motion to reconsider and modify the judgment for dissolution of marriage.

¶ 14    Thereafter, Bryce appealed.

¶ 15                                    II. ANALYSIS

¶ 16                        A. Inadequacy of the Record on Appeal

¶ 17    Before addressing Bryce's claims of error, we must consider Krissandra's argument that Bryce's appeal should be dismissed because he failed to provide an adequate record on appeal. As noted by Krissandra, the record on appeal contains no reports of proceedings, no bystander's reports and fails to include many of the exhibits submitted in the circuit court. The appellant, here Bryce, has the burden to present a sufficiently complete record of the proceedings to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). Because of these alleged deficiencies

of the record on appeal, Krissandra posits that Bryce's appeal should be dismissed. See *Landau & Associates, P.C. v. Kennedy*, 262 Ill. App. 3d 89, 92 (1994) (noting that, "in the absence of a proper record a reviewing court may dismiss an appeal"). We believe that dismissing this appeal is too drastic. However, in the absence of an adequate record to support a claim of error by Bryce, we will presume that the circuit court's orders were in conformity with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. Any doubts arising from the incompleteness of the record will be resolved against Bryce. *Id.* Furthermore, we will not consider any assertions or allegations contained in Bryce's brief that are not found in the record on appeal. See *Coombs v. Wisconsin National Life Insurance Co.*, 111 Ill. App. 3d 745, 746 ("[A]ssertions in an appellate brief cannot serve as a substitute for a proper record."). We now turn to the merits of Bryce's appeal.

¶ 18                                      B. Maintenance Award

¶ 19     Bryce's first claim of error concerns the amount of maintenance the circuit court awarded to Krissandra, specifically as it relates to his RSUs and PSUs being included as income to him for purposes of calculating Krissandra's maintenance award.

¶ 20     An award of maintenance is intended to provide the recipient spouse the same standard of living he or she enjoyed during the marriage after the marriage has been dissolved. *In re Marriage of Brankin*, 2012 IL App (2d) 110203, ¶ 9. In determining whether to award maintenance, the circuit court must consider several factors where relevant, including the income of the parties, the needs of the parties, the future earning capacity of the parties and the standard of living the parties had while married. 750 ILCS 5/504(a) (West Supp. 2019). The court may also consider any other factor it deems "just and equitable." 750 ILCS 5/504(a)(14) (West Supp. 2019). Given the multitude of factors involved, the circuit court has wide discretion in determining what factors are relevant and ultimately, if maintenance is warranted. *In re Marriage of Smith*, 2012 IL App (2d)

110522, ¶ 46. Given the discretion involved, an award of maintenance will not be reversed absent an abuse of discretion (*In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 3), which occurs only when no reasonable person would adopt the same view as the circuit court. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 52.

¶ 21    If the circuit court concludes that an award of maintenance is appropriate, the court calculates the duration and amount of the award using statutory guidelines unless the court determines there is a reason to depart from the guidelines based on the circumstances. 750 ILCS 5/504(b-1) (West Supp. 2019); see also *In re Marriage of Harms*, 2018 IL App (5th) 160472, ¶ 1. If the court awards maintenance in accordance with the statutory guidelines, which the circuit court stated it did in this case, the award is "calculated by taking 33 1/3% of the payor's net annual income minus 25% of the payee's net annual income." 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2019). However, that amount, "when added to the net income of the payee, shall not result in the payee receiving an amount that is in excess of 40% of the combined net income of the parties." *Id.* This formula only applies when the parties' gross annual income is below $500,000. 750 ILCS 5/504(b-1)(1) (West Supp. 2019).

¶ 22    Net income, as referred to in the maintenance statute, is defined in the child support section of the Act. See 750 ILCS 5/504(b-3.5) (West Supp. 2019) (referring to section 505 of the Act). Net income is calculated by taking a party's "gross income" and subtracting certain statutory deductions, such as various federal and state taxes. 750 ILCS 5/505(a)(3)(B), (C) (West Supp. 2019); see also *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 71. In turn, gross income is defined broadly as "the total of all income from all sources." 750 ILCS 5/505(a)(3)(A) (West Supp. 2019); see also *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004) (observing that the legislature has adopted a broad and expansive definition of income for purposes of the Act).

Whether a specific item constitutes income for purposes of the maintenance statute is a question of law that we review *de novo*. *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 18.

¶ 23 Turning to Bryce's claim of error, it is not exactly clear to us if he is arguing that the circuit court erred in treating his RSUs and PSUs dated after January 1, 2018, and subsequently cashed as gross income to him for purposes of calculating Krissandra's maintenance award or if he is arguing that the court erred in including these RSUs and PSUs as gross income without a cap on the award of maintenance to Krissandra. We will address both.

¶ 24 First, to the extent that Bryce argues that the circuit court erred in treating his RSUs and PSUs dated after January 1, 2018, and subsequently cashed as gross income for purposes of calculating Krissandra's maintenance award, we review this *de novo*. See *id.* Previously, this court has concluded that RSUs that have vested are to be considered income for purposes of the Act. *In re Marriage of Schlei*, 2015 IL App (3d) 140592, ¶ 19. Although we are unaware of a specific Illinois decision stating the same for PSUs, our courts have consistently ruled that various employee-stock benefits are to be included as income for purposes of the Act once a cash value has been realized. See *In re Marriage of Anderson*, 405 Ill. App. 3d 1129, 1136 (2010) (observing "the distribution of stock may constitute income for" purposes of the Act "if the stock is sold pursuant to an employment bonus-based option"); *In re Marriage of Colangelo*, 355 Ill. App. 3d 383, 392 (2005) (finding that "the realized stock distribution met the definition of 'income' for purposes" of the Act). Given this and because the circuit court ordered that only RSUs and PSUs that Bryce actually cashed were to be considered income, we cannot find the circuit court erred in treating Bryce's RSUs and PSUs as income to him.

¶ 25 We now turn to Bryce's second possible argument regarding the circuit court's alleged error, which is that it erred in including his RSUs and PSUs without a cap on the award of

maintenance to Krissandra. For support, Bryce highlights *In re Marriage of Micheli*, 2014 IL App (2d) 121245, ¶ 11, where the circuit court ordered a husband to pay his wife $3700 per month plus 20% of any future bonuses he received for 7 years as a maintenance award. On appeal, this court found that the circuit court abused its discretion in awarding the wife 20% of the husband's future bonuses because it was an "uncapped amount" that "set[] up a potential windfall for [the wife]" with "no evidentiary relation to her present needs or the parties' standard of living during the marriage." *Id.* ¶ 25. This court therefore remanded the matter to the circuit court with instructions to "recalculate the monthly maintenance amount or at least cap the amount from [the husband's] future bonuses." *Id.* Relying on this case, Bryce argues the circuit court similarly abused its discretion by failing to impose a cap on the award of maintenance to Krissandra.

¶ 26 However, Bryce completely overlooks the amendments to the maintenance statute that have occurred since *In re Marriage of Micheli.* In that case, the circuit court entered the judgment for dissolution of marriage in June 2012. At that time, there was no statutory guidelines for awarding maintenance. 750 ILCS 5/504(a) (West 2012). In other words, the circuit court not only had discretion in whether to award maintenance, but also complete discretion to determine the amount of maintenance. See *In re Marriage of Nord*, 402 Ill. App. 3d 288, 292 (2010) ("The amount of a maintenance award lies within the sound discretion of the trial court.").

¶ 27 But the maintenance statute was drastically altered by Public Act 98-961 (eff. Jan. 1, 2015), which went into effect after *In re Marriage of Micheli* was published and well after the circuit court entered the judgment for dissolution of marriage in the case. After the enactment of Public Act 98-961, the maintenance statute provided for statutory guidelines for awarding maintenance, and if the circuit court utilized a guideline maintenance award, there was a statutory limit on the amount of maintenance a spouse could receive. See 750 ILCS 5/504(b-1) (West Supp. 2015). The

current version of the maintenance statute, which is the same as when the circuit court entered the judgment for dissolution of marriage in this case, provides that the guideline maintenance award is "calculated by taking 33 1/3% of the payor's net annual income minus 25% of the payee's net annual income." 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2019). However, that amount, "when added to the net income of the payee, *shall not result* in the payee receiving an amount that is in excess of 40% of the combined net income of the parties." (Emphasis added.) *Id.* That is to say, under the current statute, there is already a cap on a spouse's potential maintenance award. As noted, the circuit court ordered Krissandra's maintenance award to be calculated using the statutory guidelines. This statutory cap eliminates any potential windfall to Krissandra that was at the heart of *In re Marriage of Micheli* and at the heart of Bryce's argument on appeal.

¶ 28    Furthermore, *In re Marriage of Micheli*, 2014 IL App (2d) 121245, ¶ 25, as discussed, this court found that the circuit court's award of maintenance bore "no evidentiary relation to [the wife's] present needs or the parties' standard of living during the marriage." And to this end, Bryce posits that, when including his RSUs and PSUs as income for purposes of calculating Krissandra's maintenance award, the circuit court's award exceeded what she needs to become financially independent and live at the same standard of living she enjoyed during the marriage. But, as highlighted by Krissandra, there is absolutely no documentation included in the record on appeal to establish the standard of living enjoyed by Krissandra during her marriage to Bryce. Without such documentation, we obviously cannot find that the circuit court provided Krissandra a maintenance award that exceeded her standard of living during her marriage to Bryce. See *Foutch*, 99 Ill. 2d at 392. We therefore find Bryce's reliance on *In re Marriage of Micheli* misplaced.

¶ 29    We also do not find Bryce's reliance on cases form foreign jurisdictions persuasive because, as noted, Illinois' maintenance statute provides guidelines for awarding maintenance with

a maintenance limit (750 ILCS 5/504 (West Supp. 2019)), whereas Wisconsin and Minnesota's statutes do not. See Minn. Stat. Ann. § 518.552; Wis. Stat. Ann. § 767.56. Consequently, we find no error in the circuit court treating Bryce RSUs and PSUs as income to him for purposes of calculating Krissandra's maintenance award and otherwise find no abuse of discretion in the court's award of maintenance to Krissandra.

¶ 30                                    C. Child Support

¶ 31    Bryce next contends that the circuit court erred in failing to credit his maintenance payments to Krissandra when calculating his child support obligation.

¶ 32    In determining the proper amount of child support, the circuit court initially calculates the amount using statutory guidelines that utilize worksheets and schedules from Illinois Department of Healthcare and Family Services. 750 ILCS 5/505(a)(1) (West Supp. 2019). The circuit court begins by calculating each parent's monthly net income and then adds those amounts together to determine their combined monthly net income. 750 ILCS 5/505(a)(1.5)(A), (B) (West Supp. 2019). As with determining a maintenance award, net income is "gross income" minus certain statutory deductions. 750 ILCS 5/505(a)(3)(B) (West Supp. 2019). And gross income is defined broadly as "the total of all income from all sources." 750 ILCS 5/505(a)(3)(A) (West Supp. 2019). Next, the court must "select the corresponding appropriate amount from the schedule of basic child support obligations based on the parties' combined monthly net income and number of children" and "calculate each parent's percentage share of the basic child support obligation" based on the parent's percentage share of their combined monthly net income. 750 ILCS 5/505(a)(1.5)(C), (D) (West Supp. 2019). However, certain adjustments must be made to the parties' net income, if specific circumstance are present, including when one party pays spousal maintenance. 750 ILCS 5/505(a)(3)(F)(II) (West Supp. 2019). According to the child support statute:

"Obligations pursuant to a court order for spousal maintenance in the pending proceeding actually paid or payable to the same party to whom child support is to be payable or actually paid to a former spouse pursuant to a court order shall be deducted from the parent's after-tax income, unless the maintenance obligation is tax deductible to the payor for federal income tax purposes, in which case it shall be deducted from the payor's gross income for purposes of calculating the parent's child support obligation." *Id.*

When the court utilizes the guidelines, "[t]here is a rebuttable presumption *** that the amount of the child support obligation" is correct. 750 ILCS 5/505(a)(3.3) (West Supp. 2019).

¶ 33    However, the circuit court does not need to utilize the statutory guidelines, and it can deviate from them to avoid "inequitable, unjust, or inappropriate" outcomes. 750 ILCS 5/505(a)(3.4) (West Supp. 2019). If the court does so, it must set forth written findings that specify the reasons for the deviation and "the presumed amount under the child support guidelines without a deviation." *Id.* In determining whether a deviation is warranted, the court may consider extraordinary medical issues of the parent or child, special developmental needs of the child or "any other factor the court determines should be applied upon a finding that the application of the child support guidelines would be inappropriate, after considering the best interest of the child." *Id.* Whether the court utilized the correct statutory formula in calculating the parties' net incomes is a question of law, which we review *de novo*. *In re Marriage of Gabriel*, 2020 IL App (1st) 182710, ¶ 56.

¶ 34    Because the circuit court ordered that Bryce's lump sum maintenance payment shall not be deductible by Bryce for federal and state income tax purposes, section 505(a)(3)(F)(II) of the Act (750 ILCS 5/505(a)(3)(F)(II) (West Supp. 2019)) mandated that Bryce's maintenance payment to

Krissandra be deducted from his income and thus not included when calculating his income for child support purposes. But, as evidenced by section 505 of the Act, determining the proper amount of child support involves reference to income documentation of two parents, reference to schedules and worksheets from the Illinois Department of Healthcare and Family Services, and math. To this end, it is impossible to know if the circuit court actually calculated the parties' net income properly, specifically deducting Bryce's maintenance payment to Krissandra from his income, where the worksheet that would show the court's math is not included in the record on appeal.

¶ 35    Take for example, *In re Marriage of Gabriel*, 2020 IL App (1st) 182710, ¶ 53, where a husband argued that the circuit court erred in calculating his child support obligation. This court agreed and found that the circuit court erred by "fail[ing] to account for the amount of maintenance it ordered [the husband] to pay to [his wife]." *Id.* ¶ 58. This court observed: "As the worksheet that the trial court attached to its judgment makes clear, the court failed to include the amount of maintenance in [the wife's] income or subtract it from [the husband's] income." *Id.* That is say, this court was able to identify the circuit court's error by specifically reviewing the child support worksheet attached to the circuit court's judgment for dissolution of marriage. In the present case, in contrast to *In re Marriage of Gabriel*, Bryce failed to include the worksheet that was attached as Exhibit A to the circuit court's judgment for dissolution of marriage. And without that worksheet, we have no way to review the math of the circuit court. As such, we must assume the court properly deducted Bryce's maintenance payment to Krissandra when calculating his child support obligation. See *Foutch*, 99 Ill. 2d at 392. Moreover, the circuit court initially ordered Bryce to pay $1645 per month in temporary child support, an amount that was decreased to $1316 two months later based on a change to Bryce's net income that included the subtraction of "taxes and maintenance." And ultimately, in the judgment for dissolution of marriage, Bryce was ordered to

pay $1242 per month in child support. As posited by Krissandra, it is reasonable to conclude that the nearly $400 per month reduction from the initial amount to the final amount was due to Bryce's maintenance award being deducted from his income in accordance with section 505(a)(3)(F)(II) of the Act.[2]

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 38    Affirmed.

---

[2] Krissandra's appellate counsel was not the same attorney who represented her below.